# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

JEREMY A. ROWLES,        )
                                  )
              Plaintiff,    )
        v.                      )     No. 2:17-CV-04250-BCW
                                    )
CURATORS OF THE         )
UNIVERSITY OF MISSOURI, *et al.*,  )
                                  )
            Defendants.   )

## ORDER

Before the Court is Defendants' Motion to Dismiss. (Doc. #11). The Court, being duly advised of the premises, grants in part and denies in part said motion.

## BACKGROUND

Plaintiff Jeremy A. Rowles filed claims against Defendants the Curators of the University of Missouri, Cathy Scroggs, Ellen Eardley, Salama Gallimore, and Andrea Hayes in the Circuit Court of Boone County, Missouri, alleging constitutional violations and discrimination on the bases of race and sex. Defendants, who are officials associated with the University of Missouri, removed Plaintiff's claims to this Court. Plaintiff's allegations as set forth in the first amended petition (Doc. #1-1) are as follows.

Plaintiff, an African-American male, was a doctoral candidate in Cultural Anthropology at the University of Missouri. Defendant the Curators of the University of Missouri is the governing body over the state university system. Defendant Scroggs, named in her individual capacity, was the Vice Chancellor for Student Affairs at the University of Missouri when Plaintiff was investigated and sanctioned by the university's Title IX Office. Defendant Eardley, named in her individual capacity, was Assistant Vice Provost for Civil Rights and Title IX for the university

1

when Plaintiff was investigated and sanctioned. Defendant Gallimore, named in her individual capacity, was the Director of Investigations and Deputy Title IX Coordinator for the university when Plaintiff was investigated and sanctioned by the Title IX office. Defendant Andrea Hayes, named in her official capacity, is the Interim Assistant Vice Chancellor for Civil Rights & Title IX for the university, and is the successor to Defendant Eardley in the office of Assistant Vice Chancellor for Civil Rights & Title IX.

While Plaintiff was enrolled in graduate school at the University of Missouri, he worked out regularly and took various dance fitness classes at the Student Recreation Center ("Rec Center"). During the 2015-2016 school year, Plaintiff developed a friendship with Annalise Breaux, who taught one of Plaintiff's fitness classes.

In April 2016, Plaintiff asked Breaux on a date. Breaux said she was busy, but the two discussed going out later in the month. On April 18, 2016, Breaux sent Plaintiff a message asking him to stop making romantic advances toward her, and indicating she wanted their friendship to remain professional. Breaux indicated she still wanted him to come to dance classes at the Rec Center, but said she needed her space outside of class. Plaintiff apologized and promised to keep their relationship professional. Thereafter, Plaintiff continued to attend dance classes at the Rec Center, including the classes that Breaux taught.

In fall 2016, Plaintiff asked Breaux to recommend some YouTube videos Plaintiff could watch to improve his dance technique. Breaux suggested Plaintiff take private lessons, which were available through the Rec Center. Breaux told Plaintiff she did not teach private dance lessons. Over the next week, Breaux avoided Plaintiff during her dance classes. On October 14, 2016, Plaintiff gave Breaux three-page letter apologizing for being awkward around her, expressing sincere feelings for her, and asking Breaux what if anything she wanted from Plaintiff.

2

After Plaintiff gave Breaux the letter, Rec Center Associate Director Emily Bach McElwaine emailed the University's Title IX office that Plaintiff had engaged in sexually harassing and stalking behaviors toward four female students who worked at the Rec Center. McElwaine purported to submit allegations on behalf of Rose Nash, Ashlyn Balch, and Hannah Turnbull.

On October 20, 2016, the Title IX office interviewed Breaux and asked her to submit a formal complaint. The next day, Breaux submitted a complaint alleging that Plaintiff's conduct and communications were "bizarre" and made her "uncomfortable."

On November 7, 2016, Title IX Investigator Amber Lammers sent Plaintiff a Notice of Investigation of Potential Sex Discrimination. The Notice identified potential violations of Section 200.010 of the University of Missouri Collected Rules and Regulations, which defines sexual harassment and stalking on the basis of sex. When Lammers interviewed Plaintiff, Plaintiff raised concerns about Defendant Gallimore's involvement in the Title IX investigation. Plaintiff believed Defendant Galimore had discriminated against him on the basis of Plaintiff's race in a prior Title IX investigation. Plaintiff believed Defendant Gallimore was predisposed to find him guilty of sexual harassment because Plaintiff is an African-American man, and the complainant is a white woman. Plaintiff told Lammers that Defendant Gallimore had told him, in connection with a previous investigation, that "[Plaintiff] looked like someone who might commit sexual assault." Lammers assured Plaintiff that Defendant Gallimore would not be involved in the investigation of Breaux's complaint. Lammers' investigation into the complaint culminated in a 54-page Investigative Report. The Report incorporates the email McElwain sent to the Title IX office on behalf of the four Rec Center employees; however, of the four, only Breaux was ever interviewed in connection with her complaint.

On December 13, 2016, Defendant Eardley emailed Plaintiff a Notice of Charges. The Notice formally accused Plaintiff of violating CPR 200.010, and asked Plaintiff to elect between a formal or informal resolution process within three business days. The Notice explained that informal resolution would involve Defendant Eardley's ruling based on her review of the Investigation Report, and formal resolution would involve a hearing in front of three administrators where Plaintiff, Breaux, and Lammer could testify and ask to present witnesses. The Notice also listed possible sanctions, but not information about what violation could result in what sanctions. Lammer sent Breaux a separate email on December 9, 2016, asking which resolution process Breaux would prefer. The email sent to Breaux did not specify a time limit for election, and also indicated Breaux could have an advisor to help her determine which resolution process to elect. Plaintiff elected informal resolution of the complaint.

In February 2017, Defendant Eardley sent Plaintiff a Notice of Intent to Render Findings by informal resolution process, "regarding the charges that you violated Section 200.010" relative to Breaux and three others. The Notice of Intent also stated it was Plaintiff's "last opportunity" to request formal resolution by hearing, and that Plaintiff would "receive the Investigative Report soon."

On March 15, 2017, the Title IX office issued "Informal Resolution Findings by the Administrative Officer." These findings concluded that Plaintiff had violated the university's prohibition of sexual harassment and stalking based on sex. Though Defendant Eardley signed the findings, Plaintiff believes Defendant Gallimore played a substantial role in drafting the findings. The findings indicated they were supported by Plaintiff's disciplinary history, noting that Plaintiff does not set appropriate professional settings with undergraduate students. The findings included reference to a September 2015 incident in which Plaintiff invited an undergraduate student to office

4

hours and insinuated he would provide questions or answers to an exam in exchange for sexual favors. The findings stated that while Plaintiff was not found to have violated the university's sexual harassment policy with reference to that incident, Plaintiff has "failed to learn from his previous warning regarding his conduct with an undergraduate female student."

Due to these findings, Plaintiff was suspended from all four campuses of the University of Missouri for four years. Plaintiff was also expelled from the Rec Center and residential halls permanently. Plaintiff could seek reenrollment after four years only if he satisfactorily completed all required steps of a Remediation Plan.

Plaintiff was surprised by the severity of the punishment. While suspension and expulsion were listed as possible sanctions for violation of university policy, Plaintiff did not know those sanctions were in play relative to Breaux's complaint. Had Plaintiff known that suspension and expulsion were possible punishments, he would not have opted for the informal resolution process.

Plaintiff appealed the Informal Resolution findings to University Vice Chancellor for Student Affairs, Defendant Scroggs. The appeal argued Plaintiff had been treated more harshly because he is an African-American male, and everything he was accused of occurred at the Rec Center, which is unrelated to his role in the Anthropology Department. In April 18, 2017, Defendant Scroggs upheld the Informal Resolution findings, but based on "compelling justification," shortened the suspension from four years to two years. The suspension terminated Plaintiff's participation in his doctoral program and ended his academic career. Plaintiff alleges his "suspension is part of a larger pattern and practice of race and gender discrimination at the University of Missouri in general and within the Title IX office in particular." (Doc. #1-1 at 23).

In Count I, Plaintiff alleges violation of his right to freedom of speech against Defendants Scroggs, Eardley, and Gallimore in their individual capacities, and against Defendant Hayes in her

official capacity. In Count II, Plaintiff alleges the university's rules against sexual harassment and stalking on the basis of sex are substantially overbroad and unconstitutional, against Defendant Hayes in her official capacity. In Count III, Plaintiff alleges CPR 200.010 is unconstitutionally vague, against Defendant Hayes in her official capacity. In Count IV, Plaintiff alleges violation of his procedural due process rights against Defendants Scroggs, Eardley, and Gallimore in their individual capacities, and against Defendant Hayes in her official capacity. In Count V, Plaintiff alleges violation of his substantive due process rights against Defendants Scroggs, Eardley, and Gallimore in their individual capacities, and Defendant Hayes in her official capacity. In Count VI, Plaintiff alleges race discrimination in federally assisted programs against Defendant Curators. In Count VII, Plaintiff alleges sex discrimination in education against Defendant Curators. In Count VIII, Plaintiff alleges race discrimination in public accommodations against all Defendants. Finally, in Count IX, Plaintiff alleges sex discrimination in public accommodations against all Defendants.

In the instant motion to dismiss, Defendants collectively seek dismissal of each of Plaintiff's claims I through IX under Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) requires a plaintiff to allege "sufficient factual matter, accept as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint setting forth "only labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient; a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the

6

[nonmoving party]," and must draw all reasonable factual inferences in the nonmoving party's favor. Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 476 (8th Cir. 2008).

## DISCUSSION

Plaintiff's Counts I through V seek relief against Defendants under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights under the First, Fourth, and Fourteenth Amendments. Count VI alleges race discrimination in violation of the Civil Rights Act of 1964 under 42 U.S.C. § 2000d. Count VII alleges sex discrimination in violation of Title IX of the Education Amendments of 1972 under 20 U.S.C. § 1681. Finally, Counts VIII and IX allege pendant state claims for race and sex discrimination in public accommodations under Mo. Rev. Stat. § 213.065 in violation of the Missouri Human Rights Act.

The Court exercises original federal question jurisdiction over Counts I through VII, and exercises supplemental jurisdiction over Counts VIII and IX since Plaintiff's state and federal claims "derive from a common nucleus of operative fact." 28 U.S.C. § 1331; United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Defendants argue that each of Plaintiff's claims asserted under § 1983 are subject to dismissal for failure to state a claim. Regarding Count I, Defendants argue Plaintiff's first amendment retaliation claim fails because the speech at issue is purely personal communication that is not protected. With respect to Counts II and III, Defendants argue the university's policies against sexual harassment and stalking are not unconstitutionally vague. With respect Count IV and V, Defendants assert Plaintiff's due process allegations are insufficient. Finally, Defendants assert that Defendants Scroggs, Eardley, and Gallimore are entitled to qualified immunity relating to Counts I, IV, and V.

7

**A. THE MOTION TO DISMISS COUNT I FOR FIRST AMENDMENT RETALIATION IS DENIED.**

Defendants argue Plaintiff's claim for first amendment retaliation should be dismissed because the letter that was the impetus for the Title IX investigation is properly categorized as unprotected private expression of a romantic interest. Plaintiff responds that the cases Defendants rely upon for the premise that the letter is unprotected speech are inapplicable where, as here, the plaintiff is not a public employee.

The First Amendment, which provides that no law may abridge the freedom of speech, is applicable to the states through the Fourteenth Amendment. Salau v. Denton, 139 F. Supp. 3d 989, 1008 (W.D. Mo. 2015). A First Amendment retaliation claim requires the plaintiff to show the following: (1) he engaged in a protected activity; (2) "the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity;" and (3) the adverse action was at all motivated by the protected activity. Scheffler v. Molin, 743 F.3d 619, 621 (8th Cir. 2014).

"[S]tudents are entitled to freedom of expression of their views," unless there is a constitutionally valid reason to regulate the expression. Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 511 (1969). Student expressions are "generally protected as long as they do not materially and substantially interfere with the requirements of appropriate discipline or collide with the rights of others." Salau, 139 F. Supp. 3d at 1009 (citing Qvyjt v. Lin, 932 F. Supp. 1100, 1108-09 (N.D. Ill. 1996) (citing Tinker, 393 U.S. at 513).

With respect to the issue of whether the adverse action was motivated by protected speech, the plaintiff must establish a causal connection between retaliatory animus and his or her subsequent injury. Hartman v. Moore, 547 U.S. 520, 259 (2006); Osborne v. Grussing, 477 F.3d 1002, 1005 (8th Cir. 2007). "The defendant's retaliatory motive must be a but-for cause of

8

retaliation; a plaintiff cannot recover if the defendant would have taken the same adverse action even in the absence of the improper motive." <u>Salau</u>, 139 F. Supp. 3d at 1009 (citing <u>Osborne</u>, 477 F.3d at 1005).

In this case, Plaintiff's allegations in support of his First Amendment retaliation claim are as follows. First, he was purportedly suspended for violating the university's policies against sexual harassment and stalking. Second, the Title IX office found that Plaintiff's behavior toward Breaux had violated these policies. Third, Defendant Scrogg's review of the sanction imposed resulted in a reduction of Plaintiff's suspension from four years to two. Fourth, the speech for which Plaintiff was suspended did not contain threats and at most, Breaux indicated she felt uncomfortable. Fifth, Plaintiff has incurred damages due to the suspension.

The university policy against sexual harassment prohibits unwelcome verbal conduct of a sexual nature that creates a hostile environment by being sufficiently severe or pervasive and objectively offensive and limits an individual's ability to participate in activities. The policy against stalking on the basis of sex prohibits engaging in a course of conduct on the basis of sex with no legitimate purpose that puts another reasonably in fear for his or her safety, or that would cause a reasonable person to be frightened, intimidated, or emotionally distressed.

With all reasonable inferences drawn in Plaintiff's favor for purposes of the motion to dismiss, Breaux's complaint indicated that Plaintiff's advances made her uncomfortable. The record at this stage does not indicate the creation of a hostile environment, show that Breaux's ability to participate in educational programs was adversely affected, show that Breaux was in reasonable fear for her safety, or show that Breaux was frightened or emotionally distressed. The allegations of the complaint are sufficient to plausibly allege that Plaintiff's speech was protected.

Case 2:17-cv-04250-BCW   Document 28   Filed 07/16/18   Page 9 of 26

Likewise, the complaint contains sufficient allegations to establish Defendants took adverse action against Plaintiff after he sent the letter to Breaux. Plaintiff's advances toward Breaux gave rise to an investigation by the Title IX office, resulted in the conclusion that that Plaintiff had violated university policy, and led to Plaintiff's suspension. Plaintiff has also plausibly alleged that Defendants actions were motivated by Plaintiff's speech activities. Thus, with all reasonable inferences drawn in Plaintiff's favor, the Court concludes Count I is factually sufficient at this stage in the litigation.

However, Defendants also seek dismissal of Plaintiff's claim against Defendants Scroggs, Eardley, and Gallimore in their individual capacities based on qualified immunity. Qualified immunity shields officials from liability for civil damages as long as the officials' conduct does not violate a clearly established right of which a reasonable person would have known. McKenney v. Harrison, 635 F.3d 354, 358 (8th Cir. 2011). Whether qualified immunity applies is determined through application of a two-part test. Nance v. Sammis, 586 F.3d 604, 605 (8th Cir. 2009). First, the question is whether, on the face of the complaint, the facts alleged establish the violation of a constitutional right. Id. If the answer to the first question is "yes", then the analysis proceeds to the second question. Id. Second, the question is whether the right at issue was clearly established at the time of the defendant's misconduct, such that a reasonable official would know that his conduct was unreasonable. Id.

Because the Court has found Plaintiff's retaliation claim is alleged sufficiently to survive the motion to dismiss, the second prong of the qualified immunity test is dipositive. With all reasonable inferences drawn in Plaintiff's favor, a reasonable official applying university policy to the circumstances described in Breaux's complaint would know that imposing sanctions for Plaintiff's conduct was unreasonable. The Court thus concludes that for purposes of the motion to

dismiss, Defendants are not shielded by qualified immunity. The motion to dismiss Count I is denied.

### B. The Motion to Dismiss Count II for Unconstitutional Overbreadth is Granted.

Defendants argue Plaintiff's claims that the university policies on sexual harassment and stalking on the basis of sex are unconstitutionally overbroad (Count II) should be dismissed for failure to state a claim. Plaintiff counters that the policies are facially overbroad because the policies prohibit speech that is otherwise protected.

"[A] law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." United States v. Stevens, 559 U.S. 460, 473 (2010).

University policy during the relevant time defined sexual harassment as follows:

1) Unwelcome sexual advances or requests for sexual activity by a person or persons in a position of power or authority to another person, or
2) Other unwelcome verbal or physical conduct of a sexual nature by a person to another person, when:
   a) Submission to or rejection of such conduct is used explicitly or implicitly as a condition for academic or employment decisions; or
   b) Such conduct creates a hostile environment by being sufficiently severe or pervasive and objectively offensive that it interferes with, limits or denies the ability of an individual to participate in or benefit from educational programs or activities or employment access, benefits or opportunities . . . .

(Doc. #1-1 at 13). "Stalking on the Basis of Sex" is defined as follows:

Stalking on the basis of sex is following or engaging in a course of conduct on the basis of sex with no legitimate purpose that puts another person reasonably in fear for his or her safety or would cause a reasonable person under the circumstances to be frightened, intimidated or emotionally distressed.

(Doc. #1-1 at 13).

With respect to substantial overbreadth, Plaintiff alleges that these policies prohibit a student from asking another student out on a date, "as long as a Title IX investigator deems the comment or proposal to be offensive." (Doc. #1-1 at 38).

For a policy or law to be stricken as constitutionally overbroad, its "overbreadth . . . must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973). The complaint states a claim for substantial overbreadth only if either of the policies is: (1) "not readily subject to narrowing construction by the state courts and (2) its deterrent effect on legitimate expression is both real and substantial." Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975).

Notably, however, federal courts generally lack authority to narrow state statutes; this Court "may not impose its own narrowing construction if the state courts have not already done so." United Food & Commercial Workers Int'l v. IBP, Inc., 857 F.2d 422, 431 (8th Cir. 1988). (citing Hill v. City of Houston, 789 F.2d 1103, 1112 (5th Cir. 1986), aff'd, 482 U.S. 451 (1987).

First, the Court considers the sexual harassment policy language. As applicable in this case, sexual harassment is unwelcome verbal conduct of a sexual nature which creates a hostile environment, in that the conduct at issue is sufficiently severe or pervasive and objectively offensive that it interferes with the individual's ability to participate in or benefit from university programs.

Analogizing employment law to the university policy, workplace sexual harassment is actionable "when sexual conduct either creates an intimidating, hostile or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance" Hill v. Ford Motor Co., 227 S.W.3d 659, 666 (Mo. 2009). To state a claim under the Missouri Human Rights Act for sexual harassment based on a hostile work environment, a

12

plaintiff must plausibly allege (1) membership in a protected group; (2) he or she was subjected to unwelcome sexual harassment; (3) his or her gender was a factor contributing to the harassment; and (4) a term, condition, or privilege of employment was affected by the harassment. Id.

In the Court's view, the university sexual harassment policy language prohibits the same type of conduct that Missouri law prohibits. Under the sexual harassment policy, unwelcome verbal conduct of a sexual nature that is sufficiently severe that it impacts the receiving individual's use of university activities and/or opportunities. Missouri courts have adopted similar narrow language in prohibiting workplace sexual harassment based on hostile work environment under the MHRA. Thus, Plaintiff's assertion that the sexual harassment policy is substantially overbroad is unavailing as interpreted in Missouri.

Second, the Court considers Plaintiff's substantial overbreadth claim as it applies to the university's policy against stalking on the basis of sex. Like the sexual harassment policy, the university's stalking policy uses language similar to that used in Missouri statutes prohibiting stalking. "A person commits the offense of stalking in the first degree if he or she purposely . . . disturbs or follows with the intent of disturbing another person and . . . [m]akes a threat communicated with the intent to cause the person who is the target of the threat to reasonably fear for his or her safety . . . ." Mo. Rev. Stat. § 565.225.2(1). "[T]he term 'disturbs' in this context is defined as "mean[ing] to engage in a course of conduct directed at a specific person that serves no legitimate purpose and would cause a reasonable person under the circumstances to be frightened, intimidiated, or emotionally distressed." Mo. Rev. Stat. § 565.225.1. Additionally, the terms frighten, intimidate, and emotional distress, are each common words in usage, definition, and understanding. State v. Vaughn, 366 S.W.3d 513, 521 (Mo. 2012). For these reasons, the Court finds that Plaintiff has not plausibly alleged that the university policies at issue have a real and

substantial deterrent effect on protected speech, and the motion to dismiss the claim for substantial overbreadth is granted.

### C. THE MOTION TO DISMISS COUNT III FOR VOID FOR VAGUENESS IS DENIED.

Defendants seek dismissal of Plaintiff's Count III that the university's policies on sexual harassment and stalking are unconstitutionally void for vagueness. Plaintiff asserts that these policies do not provide to students fair notice of what is prohibited conduct.

A challenge to a policy based on vagueness asserts that the policy does "allow persons of ordinary intelligence a reasonable opportunity to know what is prohibited." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). "Under the void-for-vagueness doctrine, a law is unconstitutional if it . . . is so standardless that it authorizes or encourages seriously discriminatory enforcement." Musser v. Maples, 718 F.3d 996, 1000 (8th Cir. 2013).

 "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned, 408 U.S. at 109. Further, "[w]here a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." Id.

Plaintiff alleges that these policies provide a basis for disciplining students based on speech among students, and do not specify that asking another student out and/or expressing romantic interest through a letter is subject to the unbound discretion of the Title IX office.

Under circumstances where the language of the policy itself does not define each word used, the Court is "relegated to the words of the ordinance, to the interpretations the court below has given to analogous statutes, and perhaps, to some degree, the interpretation of the statute given

14

by those charged with enforcing it." <u>Id.</u> Notably, standing alone, the fact that the application of the policies involve "exercise of some degree of [official] judgment" does not render them unconstitutionally vague. <u>Id.</u>

However, affording to Plaintiff the benefit of all reasonable factual inferences, the Court finds that Plaintiff has plausibly alleged a vagueness challenge on the basis that the Title IX office has discretion to define material terms in the policies, without providing fair notice of the definitions applied. <u>Sessions v. Dimaya</u>, 138 S. Ct. 1204, 1228 (2018) (5-4 decision) (Gorsuch, J., concurring) (citing <u>Grayned</u>, 408 U.S. at 108-09) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis.")).

Plaintiff's challenge to the policies based on vagueness is distinguishable from the challenge to the same policies based on substantial overbreadth. In the context of substantial overbreadth, the policies' material terms are defined by applicable case law, which sets forth the scope of the prohibited conduct. By contrast, in the context of vagueness, the definitions of terms used by the Title IX office in its discretionary exercise, and whether the definitions used are standardized, are unknown at this stage. For these reasons, Defendants' motion to dismiss Count III is denied.

### D. THE MOTION TO DISMISS COUNT IV FOR VIOLATION OF PROCEDURAL DUE PROCESS IS GRANTED.

Defendants argue Plaintiff's procedural due process claim alleged against Defendants Scroggs, Eardley, Gallimore, and Hayes in her official capacity should be dismissed because Defendants' met the minimum requirements to comply with Plaintiff's procedural due process rights.

Under the Fourteenth Amendment, "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive

any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws" U.S. Const. amend. XIV. A § 1983 procedural due process claim requires a plaintiff to show: (1) a life, liberty, or property interest that is protected by the Due Process Clause; (2) he was deprived of this interest within the meaning of the Due Process Clause; and (3) the state did not afford to the plaintiff adequate procedural rights before taking the protected interest. Mulvenon v. Greenwood, 643 F.3d 653, 657 (8th Cir. 2011).

The Supreme Court has not "found any basis for saying [the right to an education] is implicitly" protected under the Constitution. San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35 (1873). However, to the extent Plaintiff alleges a procedural due process violation premised on temporary suspension from all University of Missouri campuses and/or limitation on Plaintiff's ability to pursue his career, the complaint plausibly alleges encroachment of an interest protected by due process.

With respect to the deprivation of these interests, procedural due process requires "adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all necessary protective measures." Jones v. Snead, 431 F.2d 1115, 1117 (8th Cir. 1970). "[I]t is not sound to draw any analogy between student discipline and criminal procedure . . . ." Id.

Plaintiff alleges Defendants did not afford him adequate procedural rights before depriving him of his liberty interests. Plaintiff alleges that he did not receive meaningful notice of his right to a formal hearing, and was directed to elect formal or informal resolution within 3 days. Plaintiff also alleges the notice did not indicate he could seek guidance from an advisor with respect to this election. Additionally, Plaintiff alleges he had to decide on a resolution process without full notice of the facts alleged against him. Plaintiff, moreover, alleges that the informal resolution process

foreclosed his opportunity to challenge the hearsay allegations against him, and was in part decided in reliance on a previous unsubstantiated complaint against Plaintiff in a different context.

Plaintiff's allegations establish notice of the charge against him, notice of his right to a formal hearing, notice of his opportunity to elect informal resolution, and Plaintiff's election for informal resolution. "Due process is flexible and calls for such procedural protections as the particular situation demands." Keefe v. Adams, 840 F.3d 523, 535 (8th Cir. 2016). Plaintiff does not supply case law to support his assertions that Defendants' investigation procedure was inadequate in the specific ways identified. Moreover, with respect to the 3-day time period within which Plaintiff was to elect formal or informal resolution, "[d]ue process does not require a delay between the notice and the opportunity to respond." Id. While perhaps Plaintiff would have preferred more time to think about how to proceed and/or have preferred more information about what the Investigation Report may entail, Plaintiff's preference for more time and information does not establish that Defendants' procedure offended Plaintiff's procedural due process rights. The motion to dismiss Count IV is granted.

### E. THE MOTION TO DISMISS COUNT V FOR VIOLATION OF SUBSTANTIVE DUE PROCESS IS GRANTED IN PART AND DENIED IN PART.

Defendants argue Plaintiff's claim for violation of substantive due process is not supported by the facts alleged. Plaintiff asserts that Defendants' reckless investigation of the Title IX complaint against him deprived him of a constitutionally protected liberty interest.

The Fourteenth Amendment guarantees "substantive due process, which prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002). "Whether a substantive due process right exists is a question of law." Id.

To establish a claim for deprivation of substantive due process by a state official, the plaintiff must demonstrate: "(1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." Flowers v. City of Minneapolis, Minn., 478 F.3d 869, 873 (8th Cir. 2007).

Plaintiff's substantive due process claim alleges he had protected interests in his continued enrollment in the Ph.D. program, equal treatment, his reputation, and complete investigation into the Title IX complaint against him. As supported by Plaintiff's opposition to the motion to dismiss, only the alleged right to a complete and thorough investigation is a cognizable basis for Plaintiff's substantive due process claim. San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35 (1973) (no constitutionally-guaranteed right to education); Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) (no right to one's reputation); Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (claim for equal protection should be asserted under the equal protection clause, not shoehorned into "the more generalized notion of substantive due process").

There exists a due process right against reckless investigation. Winslow v. Smith, 696 F.3d 716, 739 (8th Cir. 2012). To establish a claim based on an inadequate investigation, the plaintiff must show that the flawed investigation was intentional or reckless, and thus shocking to the conscience. Id. "[T]he following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant; (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence; (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." Id. Mere negligence relating to an investigation, like failing to follow up on leads, does not violate due process. Id.

18

Under the allegations of the complaint, Plaintiff's substantive due process claim based on reckless investigation survives the instant motion to dismiss. Plaintiff alleges Defendants Scroggs, Eardley, and Gallimore improperly considered the previous harassment complaint against Plaintiff, in spite of the conclusion that the previous complaint was unsubstantiated. Further, Plaintiff alleges that Defendant Gallimore said he "looked like someone who might commit sexual assault" during the previous investigation. Additionally, Plaintiff's allegations of anecdotal evidence suggesting systematic race discrimination in university discipline support Plaintiff's claim of violation of substantive due process. Therefore, the motion to dismiss Count V is granted to the extent Plaintiff alleges violation of substantive due process rights predicated on interests that are not constitutionally protected, but denied regarding allegations of reckless investigation.

To the extent Defendants allege they are shielded by qualified immunity on Plaintiff's Count V, the Court finds that a reasonable official would have known that applying the same disciplinary standards differently to students of different races was unreasonable. The motion to dismiss Count V based on qualified immunity is denied.

### F. Defendants' Motion to Dismiss Count VI for Violation of the Civil Rights Act is Denied.

Defendants seek dismissal of Count VI for violation of the Civil Rights Act of 1964 because Plaintiff's factual allegations are too speculative, and even if Plaintiff has alleged sufficient facts, the Defendant Curators cannot be held vicariously liable for the discriminatory acts of individual employees. Plaintiff counters that the facts he needs to substantiate this claim further are in Defendants' possession and he should be allowed to conduct discovery to further support his claim of race discrimination under Title VI.

"No person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To prove a claim under Title VI, a plaintiff must show: (1) the defendant receives federal funds; (2) the plaintiff was discriminated against; and (3) the plaintiff's race, color, or national origin motivated the discrimination. Rodgers v. Univ. of Mo. Bd. of Curators, 56 F. Supp. 3d 1037, 1047 (E.D. Mo. 2014) (citing Thompson v. Bd. of the Special Sch. Dist. No. 1, 144 F.3d 574, 581 (8th Cir. 1998). Notably, "Title VI prohibits only intentional discrimination," and "the Curators cannot be held vicariously liable under Title VI for the actions of individual actors." Mumid v. Abraham Lincoln High Sch., 618 F.3d 789, 794 (8th Cir. 2010); Rodgers, 56 F. Supp. 3d at 1048.

Plaintiff's allegations in support of his claim under Title VI are as follows: (a) the Defendant Curators receive federal; (b) Plaintiff is a member of a protected class; (c) Plaintiff was progressing through his Ph.D. program; (d) Plaintiff was effectively expelled after expressing feelings for a white undergraduate student who complained to the Title IX office that Plaintiff's advances made her uncomfortable; (e) Plaintiff was previously investigated by the Title IX office after a complaint for quid pro quo sexual harassment, during which investigation Defendant Gallimore told him he "looked like someone who might commit sexual assault"; and (f) Defendant Curators would not have sanctioned a white Ph.D. student in the same way.

Plaintiff's complaint is sufficient to establish that the Defendant Curators receive federal funding. Further, with all reasonable inferences drawn in Plaintiff's favor, Defendant Gallimore's statement in a previous investigation that Plaintiff looked like someone who might commit sexual assault, establishes for motion to dismiss purposes that Plaintiff's race motivated the punishment against him. Notwithstanding, Plaintiff's Title VI claim may proceed only if the complaint contains sufficient factual matter suggesting the Defendant Curators discriminated against Plaintiff.

20

A cognizable Title VI claim requires a plaintiff to show (1) he is a member of a protected class; (2) he was qualified to continue his academic pursuits; (3) he suffered an adverse action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. Doe v. Trs. of the Univ. of Penn., 270 F. Supp. 3d 799, 829 (E.D. Pa. 2017) (citing Blunt v. Lower Merion Sch. Dist., 826 F. Supp. 2d 749, 758 (E.D. Pa. 2011), aff'd, 767 F.3d 247 (3d Cir. 2014) (citing Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003)). Direct evidence of discrimination is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse . . . action." Russell v. City of Kan. City, Mo. 414 F.3d 863, 866 (8th Cir. 2005). Without direct evidence, the plaintiff may show "the requisite inference of unlawful discrimination through the familiar three-step burden-shifting analysis originating in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)." Id.

"One common way to show pretext is with evidence that other similarly situated individuals who were not in the plaintiff's protected class engaged in the same conduct but were treated differently." Russell, 414 F.3d at 868. To establish disparate treatment, a plaintiff must show he is a member of a protected class, he was disciplined, and "similarly situated comparators were treated differently for the same or similar conduct." Griffin v. Crossett Sch. Dist., Inc., No. 07-CV-1015, 2008 WL 2669115, at *3 (W.D. Ark. July 1, 2008) (citing Buhendwa v. Univ. of Colo. at Boulder, 214 Fed. App'x 823, 827 (10th Cir. 2007)).

Though the complaint identifies statistics and articles suggesting the presence of race discrimination on the university campus, Plaintiff has not identified any comparators for whether non-African-American males are subject to gentler sanctions than those imposed on Plaintiff for

the same conduct. Additionally, Plaintiff suggests that the Defendant Curator's records on Title IX sanctions will bear out his assertions; however, Plaintiff asks the Court not to dismiss his Title IX claim until after Plaintiff undertakes discovery of those records.

In the Court's view, Plaintiff's request stretches the confines of Fed. R. Civ. P. 12(b)(6), which requires Plaintiff's complaint to set forth sufficient factual material from which the reasonable conclusion can be drawn that the Defendants named are liable for the misconduct alleged. Notwithstanding, the Court grants Plaintiffs the benefit of all reasonable factual inferences based on the entirety of the complaint under all the circumstances of this case. At this stage in the litigation, the Court denies Defendants' motion to dismiss Count VI.

### G. DEFENDANTS' MOTION TO DISMISS COUNT VII FOR SEX DISCRIMINATION IN EDUCATION IS GRANTED.

Defendants argue Plaintiff's Title IX claim is subject to dismissal because the complaint does not include allegations of actual notice or deliberate indifference to sex discrimination. Defendants assert that Plaintiff's reliance on what statistics might show, in terms of how the university "substantiates Title IX complaints against male students at a far greater rate than it substantiates similar complaints against female students," is insufficient under Fed. R. Civ. P. 12(b)(6). Plaintiff counters that the factual information he would need in order to supply more factual information is uniquely in Defendants' possession. Plaintiff thus argues that he should be allowed to conduct discovery to develop the factual underpinnings of his Title IX claim.

Under Title IX, "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX provides for a private cause of action against the recipient of federal funds for sex discrimination, but "a recipient of federal funds may only be liable for damages arising from its own misconduct." Ostrander v. Duggan, 341

Case 2:17-cv-04250-BCW   Document 28   Filed 07/16/18   Page 22 of 26

F.3d 745, 750 (8th Cir. 2003). A public university incurs liability under Title IX based on the following elements: (1) it was deliberately indifferent; (2) to known acts of discrimination; (3) occurring under its control. Id. (citing Shrum ex rel. Kelly v. Kluck, 249 F. 773, 782 (8th Cir. 2001).

"Title IX contains important clues that Congress did not intend to allow recovery in damages where liability rests sole on principles of vicarious liability or constructive notice." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 288 (1998). In cases that do not involve an official university policy, "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [federal fund] recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond." Id. Moreover, this failure to adequately respond must amount to a deliberate indifference to discrimination; "[t]he premise, in other words, is an official decision by the recipient not to remedy the violation." Id. (noting "rough parallel" to § 1983 action where without a deliberate indifference requirement, "there would be a risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions").

In this case, Plaintiff alleges the Defendant Curators, as the university's governing body, are prohibited under Title IX from discrimination on the basis of sex. Plaintiff alleges the Defendant Curators have delegated their powers and duties of enforcement under Title IX to the Title IX office.

Drawing all reasonable factual inferences in Plaintiff's favor, the complaint does not contain factual material suggesting the Defendant Curators had actual knowledge that female students accused of conduct similar to that for which Plaintiff was sanctioned are not treated as

Case 2:17-cv-04250-BCW   Document 28   Filed 07/16/18   Page 23 of 26

harshly as male students. To the contrary, the complaint alleges the Defendant Curators have exclusive possession of records that may indicate disparate outcomes of disciplinary proceedings taken against male versus female students. Constructive notice is inadequate to impose Title IX liability. Gebser, 524 U.S. at 288. Moreover, even if officials in the Title IX office could be said to have actual knowledge of sex discrimination, those officials are not the Defendant Curators, who are the "official[s] of the recipient entity with authority to take corrective action to end the discrimination." Id. at 290 (citing 20 U.S.C. § 1682).

In the Court's view, Plaintiff's sex discrimination claim is distinguishable from his race discrimination claim because while Plaintiff presents some statistical and anecdotal support for his claim of race discrimination claim, Plaintiff's sex discrimination claim is premised only "on information and belief." Without factual support for Plaintiff's sex discrimination claim beyond information and belief, the Court concludes Plaintiff's sex discrimination claim is insufficient under the applicable standard. The motion to dismiss Count VII is granted.

### H. Defendants' Motion to Dismiss Counts VIII and IX for Discrimination in Public Accommodations on the Bases of Race and Sex is Granted.

Defendants argue that Counts VIII and IX, alleging race and sex discrimination in public accommodations against all Defendants, should be dismissed under Fed. R. Civ. P. 12(b)(6) because the complaint is devoid of facts that suggest a right to relief beyond speculation and conjecture. Defendants assert Plaintiff's citations to academic articles, "upon information and belief," and what statistics might show are inadequate to state a claim to relief. In opposition, Plaintiff argues that the MHRA is broader than Title IX, such that Defendants' reliance on federal substantive law in support of dismissal for Counts VIII and IX is misplaced.

"Section 213.065.1 provides that all persons within the state's jurisdiction are entitled to the full and equal use and enjoyment of public accommodations without discrimination." Doe ex

rel. Subia v. Kan. City, Mo. Sch. Dist., 372 S.W.3d 43, 50 (Mo. Ct. App. 2012). Discrimination includes "any unfair treatment based on race" and/or sex. Id. (citing Mo. Rev. Stat. § 213.065(6)). "Nothing in th[e] statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor . . . if consideration of . . . protected characteristics contributed to the unfair treatment, that is sufficient." Hill v. Ford Motor Co., 277 S.W.3d 659, 665 (Mo. 2009).

In this case, Plaintiff alleges discrimination because "Defendants would not have treated a white Ph.D. student the same way that they treated [Plaintiff] if the white student had pursued a romantic relationship with a white fitness instructor," and/or "would not have treated a female Ph.D. student the same way . . . if the female student had pursued a romantic relationship with a male fitness instructor." Plaintiff alleges that his race and sex contributed to the decision "to expel him from the University." Plaintiff asserts damages due to the outrageous actions of the individual Defendants, which subject the University to vicarious liability.

Despite Plaintiff's argument, determinations related to the MHRA may be properly guided by Missouri law and federal employment discrimination decisions, "which are applicable and authoritative . . . ." Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994) (citing Midstate Oil v. Mo. Comm'n on Human Rights, 679 S.W.2d 842, 846 (Mo. 1984)). Moreover, while Plaintiff broadly alleges claims of race and sex discrimination, which is generally sufficient under the MHRA, Plaintiff's complaint does not contain sufficient factual material from which the reasonable inference can be drawn that Defendants are liable for the misconduct alleged. Keeney v. Hereford Concrete Prod., Inc., 911 S.W. 2d 622, 624 (Mo. 1995); Twombly, 550 U.S. at 555. Notwithstanding the MHRA's broad construction and remedial purpose, Fed. R. Civ. P. 12(b)(6) requires a plaintiff to provide sufficient factual material. Doe ex rel. Subia, 372 S.W.2d at 47 (Mo.

Rev. Stat. § 213.065 is a remedial statute which should be liberally construed to include those cases which fall within the spirit of the law.). Because Plaintiff's Counts VIII and IX are premised on speculation and conjecture rather than factual allegations, Defendants' motion to dismiss Plaintiff's state law claims is granted. Accordingly, it is hereby

ORDERED Defendants' Motion to Dismiss (Doc. #11) is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to Counts II, IV, V in part, VII, VIII, and IX. The motion is denied with respect to Counts I, III, V in part, and VI.

IT IS SO ORDERED.


Dated: <u>July 16, 2018</u>

                                           /s/ Brian C. Wimes
                                           JUDGE BRIAN C. WIMES
                                           UNITED STATES DISTRICT COURT