IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JEREMY A. ROWLES, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 2:17-CV-04250-BCW |
| ) | |
| CURATORS OF THE ) | |
| UNIVERSITY OF MISSOURI, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment on Counts I, III, and VI. (Doc. #70). The Court, being duly advised of the premises, denies said motion.

### UNCONTROVERTED FACTS

Plaintiff Jeremy Rowles is an African-American man who was a Ph.D. candidate in the University of Missouri's cultural anthropology program until his suspension on March 15, 2017. The Defendant Curators of the University of Missouri ("University") is the corporate name of the body governing Missouri's state university system. The University is a recipient of federal funds. Defendant Ellen Eardley was the University's Assistant Vice Provost for Civil Rights and Title IX ("Title IX Office"). Defendant Andrea Hayes succeeded Eardley and is the current Assistant Vice Provost for the Title IX Office. Defendant Cathy Scroggs was the University's Vice Chancellor for Student Affairs. Defendant Salama Gallimore was the University's Director of Investigations and Deputy Title IX Coordinator.

In Fall 2015, Rowles worked as a teaching assistant for an undergraduate-level anthropology class. In September 2015, a female undergraduate student filed a complaint against

1

Rowles with the Title IX Office. The Title IX Office found that the allegations against Rowles relative to this student's complaint were unsubstantiated and no sanctions were imposed.

Around the same time, Rowles first met AB who worked at the University Student Recreation Center ("Rec Center") where Rowles attended dance fitness classes. In September 2016, Rowles sent AB a message expressing his preference that AB give him private dance lessons. AB indicated she was not interested.

On October 7, 2016, Rowles approached AB, but she dashed off to the bathroom to avoid him. On one occasion, Rowles left a letter for AB that contained the lyrics to a song. One week later, Rowles gave AB a 3-page note that contained apologies and expressed Rowles' romantic interest in AB. AB told Rowles she was taking the note to her supervisor at the Rec Center. AB's supervisor referred Rowles' conduct to the Title IX Office.

The Title IX Office interviewed AB on October 20, 2016 based on her complaint that Rowles had engaged in harassment on the basis of sex against her in violation of University policy. AB's complaint did not assert a violation of the University's policy against stalking on the basis of sex.

Around November 7, 2016, Title IX investigator Amber Lammers sent Rowles a notice of investigation relating to AB's complaint. The notice indicated that the Title IX Office was investigating alleged violations of the University's Collected Rules and Regulations ("CRR") 200.010.C.7.b. and 200.010.C.7.d, which state as follows:

> 200.010.C. Conduct for which students . . . are subject to sanctions falls into the following categories:
>
> 7. Violation of the University's Sex Discrimination, Sexual Harassment and Sexual Misconduct in Education / Employment Policy in Section 600.020 of the [CRR].
>
>> These violations include:

2

Case 2:17-cv-04250-BCW   Document 115   Filed 04/24/19   Page 2 of 7

> b. Sexual Harassment: Sexual harassment is defined as:
>
>> 1) Unwelcome sexual advances or requests for sexual activity by a person or persons in a position of power or authority to another person, or
>>
>> 2) Other unwelcome verbal or physical conduct of a sexual nature by a person to another person, when:
>>
>>> a) Submission to or rejection of such conduct is used explicitly or implicitly as a condition for academic or employment decisions; or
>>> b) Such conduct creates a hostile environment by being sufficiently severe or pervasive and objectively offensive that it interferes with, limits or denies the ability of an individual to participate in or benefit from educational programs or activities or employment access, benefits or opportunities . . . .
>
> d. Stalking on the basis of sex is following or engaging in a course of conduct on the basis of sex with no legitimate purpose that puts another person reasonably in fear for his or her safety or would cause a reasonable person under the circumstances to be frightened, intimidated or emotionally distressed.

After the investigation into the allegations of AB's complaint, Lammers completed an investigative report, which she provided to Defendant Eardley. On March 15, 2017, Eardley issued the "Informal Resolution Findings by the Administrative Officer," which concluded that Rowles had violated CRR 200.010.C.7.b. and 200.010.C.7.d. The informal resolution findings stated that, by a preponderance of the evidence, the October 14, 2016 letter contained unwelcome sentiments that made AB uncomfortable in her place of work. Eardley concluded that Rowles violated the CRR policies against sexual harassment and stalking on the basis of sex by engaging in unwelcome verbal and physical conduct of a sexual nature toward AB in a manner that created a hostile environment sufficiently pervasive to interfere with her work. Eardley never considered or found that Rowles posed a danger of physical or sexual assault.

In fashioning sanctions based on her findings, Eardley considered the nature and circumstances of the violation, Rowles' disciplinary history, the need to prevent future incidents, and the University's expectations of doctoral students, including that graduate students familiarize themselves with the codes of ethics for their programs. For example, "[t]he American Anthropological Association's Principles of Professional Responsibility advises that individuals should maintain respectful and ethical professional relationships [and] encourages professionals to comport themselves in ways that promote an equitable, supportive and sustainable workplace environment." The informal resolution imposed against Rowles a four-year suspension from all four University campuses, banned Rowles from residence halls and the Rec Center, and included a four-part remediation program.

Rowles timely appealed the informal resolution to Scroggs. On appeal, Scroggs found that "the informal resolution decision rests on a permissible assessment of the evidence as showing that [Rowles'] persistent conduct would cause a reasonable person to be frightened, intimidated, or emotionally distressed." However, Scroggs reduced the four-year suspension to a two-year suspension.

Between August 2014 and March 2017, the Title IX Office investigated 60 complaints of sex discrimination. Three out of those 60 involved allegations of sexual harassment and stalking on the basis of sex. Two of those three involved students whose races are perceived as white, while the other involved Rowles, whose race is perceived as black. One of the white students was suspended for a period of six months; the other was sent for counseling only.

**LEGAL STANDARD**

A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Rafos v. Outboard

Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

**DISCUSSION**

In the instant motion for summary judgment, Rowles argues there is no genuine issue of material fact and he is entitled to judgment as a matter of law on Counts I, III, and VI. Rowles asserts Counts I and III through 42 U.S.C. § 1983, and Count VI through 42 U.S.C. § 2000d under the Civil Rights Act of 1964.

With respect to Counts I and VI, Rowles' motion for summary judgment is denied for the reasons set forth in the context of the Court's rulings on Defendants' motions for summary judgment. The Court considers, however, whether Rowles is entitled to summary judgment on Count III that the University policies under which Rowles was sanctioned are unconstitutionally vague.

Rowles argues he is entitled to summary judgment on his claim that the University's policies against sexual harassment and stalking on the basis of sex are unconstitutionally void for vagueness. Defendants counter that the record does not establish that CRR 200.010.C.7 is void for vagueness on its face, or as applied.

A challenge to a policy based on vagueness asserts that the policy does allow "a person of ordinary intelligence a reasonable opportunity to know what is prohibited . . . ." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). "Under the void-for-vagueness doctrine, a law is unconstitutional if it . . . is so standardless that it authorizes or encourages seriously discriminatory enforcement." Musser v. Mapes, 718 F.3d 996, 1000 (8th Cir. 2013).

When a government policy does not impose criminal penalties, "due process tolerates a lesser degree of specificity than it would from a criminal statute." Keating v. Univ. of S. Dakota,

569 Fed. App'x 469, 471 (8th Cir. 2014) (citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982)). An enactment is void for vagueness on its face "only if it is impermissibly vague in all applications." Id. Use of broad language that "does not necessarily prevent an ordinary person from recognizing that certain conduct will result in discharge or discipline" does not render a regulation unconstitutionally vague. Keating, 569 Fed. App'x 471.

Under circumstances where the language of the policy itself does not define each word used, the Court is "relegated to the words of the ordinance, to the interpretations the court below has given to analogous statutes, and perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it." Grayned, 408 U.S. at 110. Notably, standing alone, the fact that the application of a policy involves "exercise of some degree of [official] judgment" does not render them unconstitutionally vague. Id. at 114.

In the Court's view, the language of the University's policies against sexual harassment and stalking on the basis of sex is sufficient to provide meaningful notice of the conduct that runs afoul of the CRR. Rowles' argument that University officials do not always specifically define different parts of the policies in the same ways is misguided because even though the CRR does not define every phrase and aspect of CRR 200.010.C.7, "course of conduct," "legitimate purpose," and "emotional distress" have common dictionary definitions that a provide a flexible framework through which the Title IX Office can evaluate conduct. Though the CRR employs broad language, it cannot be said that the provisions under which Rowles was sanctioned are "so standardless that [they] authorize[] or encourage[] seriously discriminatory enforcement." Holder v. Humanitarian Law Project, 561 U.S. 1, 18 (2010). Rowles is not entitled to summary judgment on the basis that the CRR provisions against sexual harassment and stalking on the basis of sex are unconstitutionally vague on their faces.

6

Case 2:17-cv-04250-BCW   Document 115   Filed 04/24/19   Page 6 of 7

Nor is Rowles entitled to summary judgment on his claim that the CRR provisions are void for vagueness as applied. First, if Rowles' conduct was not reasonably prohibited on the face of the CRR provisions violated, he would not have standing to challenge the provisions as applied. Musser, 718 F.3d at 1000 (standing to challenge a statute as vague requires that the statute be unconstitutional as applied to the specific conduct at issue). Second, the record does not establish that the imposition of sanctions based on Rowles' pattern of conduct, which interfered with another's activities, and that was objectively emotionally distressing, was unreasonable or that Rowles did not have notice that sanctions might result.

For Rowles to establish summary judgment on his claim that CRR 200.010.C.7 is unconstitutionally vague, he must show there is no genuine issue of material fact and he is entitled to judgment because his conduct, as set forth in the uncontroverted facts, did not fall within the definitions of sexual harassment or stalking on the basis of sex as a matter of law. In the Court's view, the record does not support such a conclusion and Rowles is not entitled to summary judgment on Count III. Accordingly, it is hereby

ORDERED Plaintiff's Motion for Partial Summary Judgment on Counts I, III, and VI. (Doc. #70) is DENIED.

IT IS SO ORDERED.

Dated: April 24, 2019

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT