IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JEREMY A. ROWLES, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:17-CV-04250-BCW |
| | ) |
| CURATORS OF THE | ) |
| UNIVERSITY OF MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is the Defendant Curators of the University of Missouri's Motion for Summary Judgment. (Doc. #71). The Court, being duly advised of the premises, grants said motion.

### UNCONTROVERTED FACTS

The Defendant Curators of the University of Missouri is the corporate name of the body governing Missouri's state university system. Plaintiff Jeremy Rowles, an African-American man, was a Ph.D. candidate within the University's cultural anthropology department until his suspension in 2017.

Defendant Ellen Eardley was the University's Assistant Vice Chancellor for Civil Rights and Title IX (hereinafter, "Title IX Office") when Rowles was investigated and sanctioned. Defendant Andrea Hayes succeeded Eardley and is the current Assistant Vice Chancellor of the Title IX Office.

Defendant Cathy Scroggs was the University's Vice Chancellor for Student Affairs when Rowles was investigated and sanctioned. Defendant Salama Gallimore was the University's Director of Investigations and Deputy Title IX Coordinator when Rowles was investigated and

1

sanctioned. The University hired Gallimore in 2014 to work as the Title IX Office's lead investigator and promoted her in 2015 to Director.

In fall 2015, Rowles worked as a teaching assistant for an undergraduate-level anthropology course. In September 2015, Rowles met with an undergraduate student, LW, and offered to show her a copy of an upcoming exam, telling LW not to "give [him] any money" or otherwise "do anything that's going to get [him] in trouble" in return. Rowles then asked LW to walk to a coffee shop with him. After this encounter, LW filed a complaint against Rowles with the Title IX Office.

Gallimore sent Rowles email notice of LW's complaint alleging that Rowles had violated certain provisions of the University's Collected Rules and Regulations ("CRR"). Rowles perceived Gallimore as African-American.

In November 2015, Rowles exchanged social media communications with another undergraduate student, HT. The communications reflect Rowles' attempts to establish a romantic relationship with HT, and HT's expression of discomfort stemming from Rowles' efforts.

On December 29, 2015, Rowles received an email from Kenneth Dean, Senior Associate Provost, that Rowles needed to choose between administrative resolution or hearing panel resolution of LW's complaint. On January 3, 2016, Rowles sent notice that he selected administrative resolution. On March 9, 2016, Dean emailed Rowles to inform him that the evidence relating to LW's complaint against him did not establish violation of the CRR by a preponderance of the evidence.

During Rowles' enrollment at the University as a graduate student, he often made use of the Student Recreation Center ("Rec Center"). Rowles used the Rec Center to work out and to take

2

Case 2:17-cv-04250-BCW   Document 116   Filed 04/24/19   Page 2 of 9

dance fitness classes, through which Rowles became friends with AB, an undergraduate student who was an instructor at the Rec Center.

Rowles began making comments to AB by social media, leading AB to tell Rowles his contacts were becoming excessive and the relationship between them "need[ed] to remain in the professional setting." Rowles apologized and responded that he did not mean to make AB uncomfortable.

Rowles attended two to three fitness classes per week at the Rec Center, and recognized AB's attempts to avoid him. After one class, Rowles left a note for AB with a song title written on it, and a drink token for the coffee shop where AB worked.

In October 2016, Rowles emailed AB expressing his preference that she give him private dance lessons. Rowles also gave AB a 3-page letter asking AB to explain what she "would want from him." Rowles knew AB was distressed by interacting with him because when Rowles would approach, AB would run away.

In November 2016, the Rec Center Associate Director filed a complaint with the Title IX Office on behalf of AB and some other female students. On November 7, 2016, Rowles received an interim suspension letter from Eardley, indicating that Rowles should refrain from going to the Rec Center until the Title IX complaint was resolved.

On November 7, 2016, Title IX investigator Amber Lammers sent Rowles a notice of investigation advising Rowles of his rights and indicating that he was being investigated for violations of the University's policies against sexual harassment and stalking on the basis of sex, as set forth in the CRR. While Rowles understood he was entitled to an advisor during the investigation process, he did not have one.

After the Title IX Office sends a notice of investigation, it undertakes an investigation that involves talking to witnesses, collecting documentary evidence, and preparing an investigative report. In matters involving students, the Title IX Administrator determines whether there exists sufficient evidence for the issuance of a Notice of Charges.

On December 13, 2016, Rowles received an email from Eardley informing him that the investigation of AB's complaint would proceed, and Rowles had three business days to select informal or formal resolution. Informal resolution involves administrative consideration, while formal resolution involves a hearing panel.

On February 24, 2017, Rowles received an email from Eardley that the investigation was nearly complete, and she would soon begin her review of the investigative report. Eardley indicated it was Rowles' final opportunity to request formal resolution of the complaint by hearing panel.

On February 28, 2017, Rowles received an email from Lammers, which included a copy of the investigative report. Rowles responded to Lammers' email that he would "stick to the informal resolution option," would meet with Student Legal Services for legal advice, and would meet with Eardley the next day.

The standard of proof to determine whether a University policy violation occurred is by a preponderance of the evidence, or, whether it is more likely than not that a violation occurred. In her findings, Eardley wrote that "AB stated that the accumulation of these incidents made her feel uncomfortable and interfered with her ability to focus on work at the rec center." Eardley viewed the overall allegations as threatening, and that Rowles sent AB about 30 social media messages between March 2, 2016 and April 18, 2016, in which he occasionally addressed AB as "Silky," instead of her name. Eardley thought the evidence suggested AB generally felt intimidated or

4

Case 2:17-cv-04250-BCW   Document 116   Filed 04/24/19   Page 4 of 9

unsafe. Eardley determined whether a reasonable person under the circumstances would have been frightened, intimidated, or emotionally distressed. Eardley found that from an objective standard, Rowles' conduct was unwelcome and hostile. Eardley evaluated the totality of the circumstances and determined that a four-year suspension was an appropriate sanction, based on the nature and circumstances surrounding the violation, Rowles' disciplinary history, the need to prevent future reoccurrences, and other information she deemed relevant.

On March 15, 2017, Rowles received notice of the informal resolution determination that he had violated the University's policies against sexual harassment and stalking on the basis of sex. On March 24, 2017, Rowles appealed the decision to Scroggs, through his attorney. University policy provides for three grounds for appeal, as follows: (1) procedural error significantly impacting the outcome of the resolution; (2) new evidence previously unavailable; and (3) that the sanctions fell outside the range typically imposed for the offense, or for the cumulative conduct record of the accused. Rowles' appeal was based on this third ground, that the four-year suspension imposed as sanctions was outside the typical range. The appellate officer determines whether the sanction is outside the typical range. Scroggs reviewed the investigative report and Eardley's findings, and concluded that AB was afraid of Rowles, Rowles' conduct changed how AB did her work and her experiences on campus, and that Rowles was a danger to AB. Scroggs concluded, however, that the four-year suspension was beyond the typical range of sanctions and should be reduced to two years, after which AB would no longer be on campus as an undergraduate student.

On April 18, 2017, Rowles received a letter from Scroggs detailing her appellate findings, including her final decision to uphold the Title IX Office's conclusion that Rowles had violated University policy, but modifying the resulting sanction from a four-year suspension to a two-year suspension, to conclude at the end of the summer 2019.

5

Case 2:17-cv-04250-BCW    Document 116    Filed 04/24/19    Page 5 of 9

## LEGAL STANDARD

A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

## ANALYSIS

The Curators seek summary judgment on Rowles' Count VI alleging race discrimination in federally assisted programs in violation of the Civil Rights Act of 1964. The Curators assert that Rowles cannot demonstrate intentional race discrimination and/or otherwise establish that the Curators' treatment of Rowles was pretext for race discrimination. In opposition, Rowles argues he has established a prima facie case of race discrimination based on evidence showing that the Curators punished Rowles more harshly than two other students, perceived as white, who were found to have violated the University's policies against sexual harassment and stalking on the basis of sex, and the Curators have not provided a race-neutral explanation for the disparate sanctions.

"No person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To prove a claim under Title VI, a plaintiff must show: (1) the defendant receives federal funds; (2) the plaintiff was discriminated against; and (3) the plaintiff's race, color, or national origin motivated the discrimination. Rodgers v. Univ. of Mo. Bd. of Curators, 56 F. Supp. 3d 1037, 1047 (E.D. Mo. 2014) (citing Thompson v. Bd. of the Special Sch. Dist. No. 1, 144 F.3d 574, 581 (8th Cir. 1998)).

6

"Title VI prohibits only intentional discrimination," and "the Curators cannot be held vicariously liable under Title VI for the actions of individual actors." Mumid v. Abraham Lincoln High Sch., 618 F.3d 789, 794 (8th Cir. 2010); Rodgers, 56 F. Supp. 3d at 1048.

Direct evidence of intentional discrimination can be shown with "evidence showing a specific link between the alleged discriminatory animus and the challenged decision," allowing a finding of "an illegitimate criterion actually motivated" the complained-of actions. Russell v. City of Kansas City, Mo., 414 F.3d 863, 866 (8th Cir. 2005). In the absence of direct evidence of discrimination, the McDonnell Douglas burden-shifting analysis governs Title VI claims. Fuller v. Rayburn, 161 F.3d 516, 518 (8th Cir. 1998). "One common way to show pretext is with evidence that other similarly situated individuals who were not in plaintiff's protected class engaged in the same conduct but were treated differently." Russell, 414 F.3d at 868. To establish indirect evidence of race discrimination through disparate treatment, a plaintiff must demonstrate he is a member of a protected class, he was disciplined, and "similarly situated comparators were treated differently for the same or similar conduct." Griffin v. Crossett Sch. Dist., Inc., No. 07-CV-1015, 2008 WL 2669115, at *3 (W.D. Ark. July 1, 2008) (citing Buhendwa v. Univ. of Colo. at Boulder, 214 Fed. App'x 823, 827 (10th Cir. 2007)). If the plaintiff can demonstrate a prima facie case of race discrimination under Title VI with indirect evidence, then the defense must "articulate some legitimate, nondiscriminatory reason for" its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

In this case, with all reasonable factual inferences drawn in Rowles' favor, there is no genuine issue of material fact that the University receives federal funds. The Court must determine whether there is no genuine issue of material fact and the Curators are entitled to judgment as a

matter of law with respect to Rowles' assertions that he was discriminated against on the basis of race.

The summary judgment record does not contain direct evidence of discrimination. To the extent Rowles would assert that Gallimore made a discriminatory statement against him, the statement that Rowles looked like someone who might commit sexual assault does not explicitly reference Rowles' race. Moreover, with all reasonable inferences drawn in Rowles' favor, the record demonstrates that Gallimore was not involved in the investigation or decision-making relating to AB's complaint against Rowles.

Because the record does not contain direct evidence of race discrimination, the Court considers whether, with all reasonable inferences drawn in Rowles' favor, he has made prima facie case of indirect race discrimination for which the Curators provide no legitimate explanation.

Rowles seeks to establish that he was discriminated against on the basis of race in violation of Title VI because the two other individuals found to have violated the University's policies against sexual harassment and stalking on the basis of sex, who are perceived white as compared to Rowles who is perceived black, received milder sanctions than those imposed against Rowles.

While the record demonstrates that the other students found to have violated the University's policies against sexual harassment and stalking on the basis of sex are perceived as white and received lesser sanctions than Rowles, the record does not establish that the circumstances surrounding these other two instances of violation of the University's policies are suitable comparators for purposes of Rowles establishing race discrimination. Rowles identifies two white students, sanctioned by the Title IX Office for conduct amounting to sexual harassment and stalking on the basis of sex. One of these students was suspended for six months, was barred from residence halls, and was required to undergo counseling. The other student was not suspended

8

for any duration, but was rather required to undergo counseling, despite accusations that the student had engaged in conduct amounting to nonconsensual sexual contact.

The Court previously determined, in the context of Rowles' motion to compel discovery, "that the relevant potential comparators involve complaints of sexual harassment and stalking on the basis of sex, made by white undergraduate students against graduate students." (Doc. #57). The record does not demonstrate that the circumstances under which the other two students were sanctioned more lightly are sufficiently similar to the circumstances in which Rowles was sanctioned for a period of two years. Though Rowles argues that the information necessary to establish these comparable circumstances is in the unique possession of the Curators, this Court previously found further discovery into the underlying facts of other Title IX complaints need not be produced to, among other reasons, preserve victim confidentiality. The Court thus concludes that there is no genuine issue of material fact and the Curators are entitled to judgment as a matter of law with respect to Rowles' claim for Title IV race discrimination because Rowles cannot demonstrate a prima facie case. Accordingly, it is hereby

ORDERED Defendant Curators of the University of Missouri's Motion for Summary Judgment (Doc. #71) is GRANTED.

IT IS SO ORDERED.


Dated: <u>April 24, 2019</u>

<u>/s/ Brian C. Wimes</u>
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT