IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JEREMY A. ROWLES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:17-CV-04250-BCW |
| CURATORS OF THE UNIVERSITY OF MISSOURI, et al., | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Before the Court is Defendant Ellen Eardley's Partial Motion for Summary Judgment as to Counts I and V (Doc. #72); Defendant Andrea Hayes' Partial Motion for Summary Judgment as to Counts I, III, and V (Doc. #73); Defendant Salama Gallimore's Partial Motion for Summary Judgment as to Counts I and V (Doc. #74); and Defendant Cathy Scroggs' Partial Motion for Summary Judgment as to Counts I and V (Doc. #76). The Court, being duly advised of the premises, grants said motions.

## UNCONTROVERTED FACTS

The Defendant Curators of the University of Missouri ("Curators") is the corporate name of the body governing Missouri's state university system. Plaintiff Jeremy Rowles, an African-American man, was a Ph.D. candidate within the University's cultural anthropology department until his suspension in 2017.

Defendant Ellen Eardley was the University's Assistant Vice Chancellor for Civil Rights and Title IX (hereinafter, "Title IX Office"). Defendant Andrea Hayes succeeded Eardley and is the current Assistant Vice Chancellor of the Title IX Office.

Defendant Cathy Scroggs was the University's Vice Chancellor for Student Affairs. Defendant Salama Gallimore was the University's Director of Investigations and Deputy Title IX Coordinator. The University hired Defendant Gallimore in 2014 to work as the Title IX Office's lead investigator. In 2015, Gallimore was promoted to Director.

In fall 2015, Rowles worked as a teaching assistant for an undergraduate-level anthropology course. In September 2015, Rowles met with an undergraduate student, LW, and offered to show her a copy of an upcoming exam, telling LW not to "give [him] any money" or otherwise "do anything that's going to get [him] in trouble" in return. Rowles then asked LW to walk to a coffee shop with him. After this encounter, LW filed a complaint against Rowles with the Title IX Office.

Defendant Gallimore sent Rowles email notice of LW's complaint that Rowles had violated certain provisions of the University's Collected Rules and Regulations ("CRR"). Rowles perceived Defendant Gallimore as African-American.

In November 2015, Rowles exchanged social media communications with another undergraduate student, HT. The communications reflect Rowles' attempts to establish a romantic relationship with HT, and HT's expression of discomfort stemming from Rowles' efforts.

On December 29, 2015, Rowles received an email from Kenneth Dean, Senior Associate Provost, that Rowles needed to choose between administrative resolution or hearing panel resolution of LW's complaint. On January 3, 2016, Rowles selected the administrative resolution. On March 9, 2016, Dean emailed Rowles to inform him that the evidence relating to LW's complaint against him did not establish violation of the CRR by a preponderance of the evidence.

During Rowles' enrollment at the University as a graduate student, he often made use of the Student Recreation Center ("Rec Center"). Rowles used the Rec Center to work out and to take

2

Case 2:17-cv-04250-BCW   Document 117   Filed 04/24/19   Page 2 of 16

dance fitness classes, through which Rowles became friends with AB, an undergraduate student who was an instructor at the Rec Center.

Rowles began making comments to AB by social media, leading AB to tell Rowles his contacts were becoming excessive and the relationship between them "need[ed] to remain in the professional setting." Rowles apologized and responded that he did not mean to make AB uncomfortable.

Rowles attended two to three fitness classes per week at the Rec Center, and recognized AB's attempts to avoid him. After one class, Rowles left a note for AB with a song title written on it, and a drink token for the coffee shop where AB worked.

In October 2016, Rowles emailed AB expressing his preference that she give him private dance lessons. Rowles also gave AB a 3-page letter asking AB to explain what she "would want from him." Rowles knew AB was distressed by interacting with him because when Rowles would approach, AB would run away.

In November 2016, the Rec Center Associate Director filed a complaint with the Title IX Office on behalf of AB and some other female students. On November 7, 2016, Rowles received an interim suspension letter from Eardley, indicating that Rowles should refrain from going to the Rec Center until the Title IX complaint was resolved.

On November 7, 2016, Title IX investigator Amber Lammers sent Rowles a notice of investigation advising Rowles of his rights and indicating that he was being investigated for violations of the University's policies against sexual harassment and stalking on the basis of sex, as set forth in the CRR. While Rowles understood he was entitled to an advisor during the investigation process, he did not have one.

After the Title IX Office sends a notice of investigation, it undertakes an investigation that involves talking to witnesses, collecting documentary evidence, and preparing an investigative report. In matters involving students, the Title IX Administrator determines whether there exists sufficient evidence for the issuance of a Notice of Charges.

On December 13, 2016, Rowles received an email from Eardley informing him that the investigation of AB's complaint would proceed, and Rowles had three business days to select informal or formal resolution. Informal resolution involves administrative consideration, while formal resolution involves a hearing panel.

On February 24, 2017, Rowles received an email from Eardley that the investigation was nearly complete, and she would soon begin her review of the investigative report. Eardley indicated it was Rowles' final opportunity to request formal resolution of the complaint through hearing panel.

On February 28, 2017, Rowles received an email from Lammers, which included a copy of the investigative report. Rowles responded to Lammers' email that he would "stick to the informal resolution option," would meet with Student Legal Services for legal advice, and would meet with Eardley the next day.

The standard of proof to determine whether a University policy violation occurred is by a preponderance of the evidence, or, whether it is more likely than not that a violation occurred. In her findings, Eardley wrote that "AB stated that the accumulation of these incidents made her feel uncomfortable and interfered with her ability to focus on work at the rec center." Eardley viewed the overall allegations as threatening, and found that Rowles sent AB about 30 social media messages between March 2, 2016 and April 18, 2016, in which he occasionally addressed AB as "Silky," instead of her name. Eardley thought the evidence suggested AB generally felt intimidated

4

or unsafe. Eardley determined whether a reasonable person under the circumstances would have been frightened, intimidated, or emotionally distressed. Eardley found that from an objective standard, Rowles' conduct was unwelcome and hostile. Eardley evaluated the totality of the circumstances, and determined that a four-year suspension was an appropriate sanction, based on the nature and circumstances surrounding the CRR violation, Rowles' disciplinary history, the need to prevent future reoccurrences, and other information she deemed relevant, such as his past interactions with undergraduate students HT and LW.

On March 15, 2017, Rowles received notice of the investigation conclusion that he had violated the University's policies against sexual harassment and stalking on the basis of sex. On March 24, 2017, Rowles appealed the decision to Scroggs, through his attorney. University policy provides for three grounds for appeal, as follows: (1) procedural error significantly impacting the outcome of the resolution; (2) new evidence previously unavailable; and (3) that the sanctions fell outside the range typically imposed for the offense or for the cumulative conduct record of the accused. Rowles' appeal was based on this third ground, that the four-year suspension imposed as sanctions was outside the typical range. The appellate officer determines whether the sanction is outside the typical range. Scroggs reviewed the investigative report and Eardley's findings, and concluded that AB was afraid of Rowles, Rowles' conduct changed how AB did her work and her experiences on campus, and that Rowles was a danger to AB. Scroggs concluded, however, that the four-year suspension was beyond the typical range and should be reduced to two years, after which AB would no longer be on campus as an undergraduate student.

On April 18, 2017, Rowles received a letter from Scroggs detailing her appellate findings, including her final decision to uphold the Title IX Office's conclusion that Rowles had violated

University policy, but modifying the resulting sanction from a four-year suspension to a two-year suspension, to conclude at the end of the summer 2019.

## LEGAL STANDARD

A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

## ANALYSIS

In the motions before the Court, the individual Defendants seek summary judgment on Rowles' claims. Rowles' Count I alleges First Amendment retaliation against Defendants Eardley, Hayes, Gallimore, and Scroggs. Rowles alleges this claim against Hayes in her official capacity, but against Eardley, Gallimore, and Scroggs in their respective individual capacities. Rowles' Count III alleges, against Hayes in her official capacity, that the University's policies that Rowles was found to have violated are unconstitutionally vague. Rowles' Count V alleges violation of substantive due process against Eardley, Hayes, Gallimore, and Scroggs. Rowles alleges this claim against Hayes in her official capacity, but against Eardley, Gallimore, and Scroggs in their respective individual capacities.

Eardley, Gallimore, and Scroggs seek summary judgment on Rowles' claim for First Amendment retaliation alleged against them in their respective individual capacities in Count I, and Rowles' claim for violation of substantive due process alleged against them in their respective individual capacities in Count V. (Docs. #72, #74, & #76). Hayes seeks summary judgment on Rowles' claim for First Amendment retaliation alleged against her in her official capacity in Count I, Rowles' claim that the University's policies are unconstitutionally vague alleged against her in

6

her official capacity in Count III, and Rowles' claim for violation of substantive due process alleged against her in her official capacity in Count V. (Doc. #73).

### A. DEFENDANTS EARDLEY, GALLIMORE, SCROGGS, AND HAYES ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT I.

In Count I, Plaintiff alleges violation of his First Amendment rights, brought pursuant to 42 U.S.C. § 1983, against Defendants Eardley, Gallimore, and Scroggs, in their individual capacities, and against Defendant Hayes in her official capacity. Defendants each seek summary judgment based upon immunity.

The First Amendment which provides that no law may abridge the freedom of speech, is applicable to the states through the Fourteenth Amendment. Salau v. Denton, 139 F. Supp. 3d 989, 1008 (W.D. Mo. 2015). A First Amendment retaliation claim requires the plaintiff to prove the following: (1) he engaged in a protected activity; (2) "the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity;" and (3) the adverse action was at all motivated by the protected activity. Scheffler v. Molin, 743 F.3d 619, 621 (8th Cir. 2014).

"[S]tudents are entitled to freedom of expression of their views," unless there is a constitutionally valid reason to regulate the expression. Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 511 (1969). Student expressions are "generally protected as long as they do not materially and substantially interfere with the requirements of appropriate discipline or collide with the rights of others." Salau, 139 F. Supp. 3d at 1009 (citing Qvyjt v. Lin, 932 F. Supp. 1100, 1108-09 (N.D. Ill. 1996) (citing Tinker, 393 U.S. at 513).

Defendants assert they are entitled to summary judgment because Rowles cannot demonstrate Defendants took adverse action against him based on protected speech. The record demonstrates Rowles was subject to sanctions based on his communications and conduct relative

7

to AB. The Court thus considers whether, with all reasonable factual inferences drawn in Rowles' favor, that Defendants punished Rowles for protected speech.

While the right of free speech is not absolute, in general, the First Amendment prevents the government from prohibiting speech "simply because of disapproval of the ideas expressed. Indeed, with a few exceptions, most speech receives First Amendment protection." Burnham v. Ianni, 119 F.3d 668, 674 (8th Cir. 1997) (citations omitted). Exceptions include obscenity, defamation, fraud, incitement to violence, true threats, and speech integral to criminal conduct. Roth v. United States, 354 US. 476 (1957); Beauharnais v. People of State of Ill., 343 U.S. 250 (1952); Brandenburg v. Ohio, 395 U.S. 444 (1969); Watts v. United States, 394 U.S. 705 (1969); Giboney v. Empire Storage & Ice Co., 336 U.S. 490 (1949).

"The inquiry into the protected status of speech is one of law, not fact." McCullough v. Univ. of Ark. for Med. Sci., 559 F.3d 855, 866 (8th Cir. 2009) (citing Connick v. Myers, 461 U.S. 138, 146 1983)). As Rowles' brief asserts, "[t]here is of course no question that non-expressive, physically harassing *conduct* is entirely outside the ambit of the free speech clause. But there is also no question that the free speech clause protects a wide variety of speech that listeners may consider deeply offensive . . . ." Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 206 (3d Cir. 2001) (emphasis in original).

"'Where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy.' This passage suggests that government may constitutionally prohibit speech whose *non-expressive* qualities promote discrimination." Id. at 208 (quoting R.A.V. v. City of St. Paul, 505 U.S. 377, 389 (1992) (emphasis in original)).

Rowles asserts Tinker requires, on a defendant's part, more than a mere desire to avoid the discomfort and unpleasantness that accompanies an unpopular viewpoint when the state seeks to prohibit an expression of opinion. Id. at 509. Defendants maintain that Rowles did not engage in a protected activity. Defendants argue that Rowles' threatening and intimidating actions, even though they may contain elements of speech, are not protected by the First Amendment.

Qualified immunity shields officials from liability for civil damages as long as the officials' conduct does not violate a clearly established right of which a reasonable person would have known. McKenney v. Harrison, 635 F.3d 354, 358 (8th Cir. 2011). Whether qualified immunity applies is determined through application of a two-part test. Nance v. Sammis, 586 F.3d 604, 605 (8th Cir. 2009). First, the question is whether, on the face of the complaint, the facts alleged establish the violation of a constitutional right. Id. If the answer to the first question is "yes", then the analysis proceeds to the second question. Id. Second, the question is whether the right at issue was clearly established at the time of the defendant's misconduct, such that a reasonable official would know that his conduct was unreasonable. Id.

Since this matter is before the Court on a motion for summary judgment based on qualified immunity, the court "ordinarily must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party." Harlow v. Fitzgerald, 457 U.S. 800, 816 n. 26 (1982). Qualified immunity shields government officials from suit unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Id. at 818; Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1996).

"The purpose of qualified immunity is to allow public officers to carry out their duties as they believe are correct and consistent with good public policy, rather than acting out of fear for their own personal financial well being." Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002).

"Toward this end, the rule has evolved that an official performing discretionary functions will generally be immune from liability unless a reasonable person in his position would have known his actions violated clearly established law." Id. (citing Anderson v. Creighton, 483 U.S. 635, 640, (1987)).

Here, the uncontroverted facts are that investigator Amber Lammers was responsible for the investigation into the allegations made against Rowles. On December 13, 2016, Rowles received an email from Eardley informing him that the investigation of the complaint would proceed, and he had three business days to select informal or formal resolution. Lammers investigated AB's allegations against Rowles and prepared the investigative report, Eardley evaluated the evidence in an informal resolution process, and Scroggs reviewed Eardley's findings. Gallimore was not involved in the investigation or decision-making process relative to AB's complaint.

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir.2006) (internal quotations and citations omitted). Even if Gallimore could be considered involved in the investigation in her capacity as the Director of the Title IX Office, any involvement would necessarily be in Gallimore's official capacity; Rowles' claims against Gallimore are asserted against her in her individual capacity only. Further, the record does not demonstrate any causal link or personal involvement in the investigation which forms the basis of Rowles' claims. Gallimore is thus entitled to summary judgment on Rowles' Count I.

The Court thus considers whether Eardley and Scroggs, who were involved in evaluating the allegations against Rowles, are entitled to qualified immunity. "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2015) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)). Even with all reasonable inferences drawn in Rowles' favor, the record establishes that Rowles was punished for his conduct which was found to be unwelcome and hostile and not for engaging in protected speech.

Even assuming parts of Rowles' expressions were protected speech, Eardley and Scroggs are entitled to qualified immunity. Though Rowles' amorous speech might encompass protected speech, the right to engage in hostile and unwelcome behavior was not clearly established at the time sanctions were imposed. Nord. v. Walsh Cty., 757 F.3d 734, 739 (8th Cir. 2014). Consequently, the record does not demonstrate the deprivation of a clearly established constitutional right at the time Rowles was sanctioned, and Eardley and Scroggs are entitled to summary judgment on Count I based on qualified immunity.

With respect to Hayes, against whom Rowles alleges Count I in her official capacity, Hayes is immune from a claim for damages under 42 U.S.C. § 1983. Claims against government officials in "official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). The Eleventh Amendment to the United States Constitution prohibits suits for monetary damages against the state, state agencies, or state officials acting in their official capacities. Nix v. Norman, 879 F.2d 429 (8th Cir. 1989). Sovereign immunity bars Rowles' Count I against Hayes. For all of these reasons, Defendants are entitled to summary judgment on Count I.

**B. DEFENDANT HAYES IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III.**

In Count III, Plaintiff brings suit against Hayes in her official capacity alleging that the University's policies prohibiting sexual harassment and stalking on the basis of upon sex are so vague that they invite arbitrary and discriminatory enforcement by the Title IX Office.

A vagueness challenge that asserts a policy does not "allow persons of ordinary intelligence a reasonable opportunity to know what is prohibited." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). "Under the void-for-vagueness doctrine, a law is unconstitutional if it . . . is so standardless that it authorizes or encourages seriously discriminatory enforcement." Musser v. Mapes, 718 F.3d 996, 1000 (8th Cir. 2013).

The policies at issue are contained in the University's Collected Rules and Regulations ("CRR"), which prohibits three kinds of sexual harassment. First, "[u]nwelcome sexual advances or requests for sexual activity by a person or persons in a position of power or authority to another person." CRR 200.010.C.7.b.1. Second, "[u]nwelcome verbal or physical conduct of a sexual nature by a person to another person, when: Submission to or rejection of such conduct is used explicitly or implicitly as a condition for academic or employment decisions." CRR 200.010.C.7.b.2.a. Third, "unwelcome verbal or physical conduct of a sexual nature by a person to another person, when: . . . Such conduct creates a hostile environment by being sufficiently severe or pervasive and objectively offensive that it interferes with, limits or denies the ability of an individual to participate in or benefit from education programs or activities or employment access, benefits, or opportunities." CRR 200.010.C.7.b.2.b.

The definition of stalking on the basis of sex includes engaging in a course of conduct, on the basis of sex, with no legitimate purpose, that puts another in reasonable fear for her safety or would cause a reasonable person, under the circumstances, to be emotionally distressed.

Plaintiff asserts that the policies at issue are facially void for vagueness. A governmental policy is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Holder v. Humanitarian Law Project, 561 U.S. 1, 18 (2010) (quotation omitted). When, as is the case here, an enactment does not impose criminal penalties, due process tolerates a lesser degree of specificity than it would from a criminal statute. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498–99 (1982).

At most, Rowles shows that amongst Defendants there are different understandings as to the meaning of a person in a position of power included in CRR 200.010.C.7.b.1. Hayes argues that the conflicting deposition testimony as to the meaning of the position of power language is of no consequence.

Although the policies employ broad language, that alone does not necessarily prevent an ordinary person from understanding that certain conduct will result in discipline. Hayes maintains that the policies at issue create a framework that the Title IX Office uses to analyze student conduct to determine whether another student's rights have been violated. "Flexibility and reasonable breadth are acceptable as long as it is clear what the rule as a whole prohibits." Grayned, 408 U.S. at 111.

As the CRR articulates a set of expectations that, taken together, provide an ordinary person meaningful notice of the conduct prohibited by the policy, the subject provisions of the CRR are not unconstitutionally vague. While it may be true that not every aspect of the policies is explicitly defined, many instances of harassment would fall within the policies proscriptions, thus any claim that the policy is facially unconstitutional fails. Keating v. Univ. of S. Dakota, 569 Fed. App'x. 469, 471 (8th Cir. 2014) (A policy which articulates a more comprehensive set of expectations

that, when taken together, provide meaningful notice of acceptable conduct, that policy is not facially unconstitutional.)

Further, the subject policies are not impermissibly vague as applied to Rowles. First, Rowles' conduct reasonably falls within that prohibited by the CRR's provisions relating to sexual harassment and stalking on the basis of sex. Second, the language employed in the CRR relative to these policies create the permissible flexibility and reasonable breadth needed to enforce these policies while being sufficiently clear as to what conduct is prohibited. Therefore, Rowles cannot establish, as a matter of law, that the University's policies against sexual harassment and stalking on the basis of sex are unconstitutionally void for vagueness. Hayes is thus entitled to summary judgment on Count III.

### C. DEFENDANTS EARDLEY, GALLIMORE, SCROGGS, AND HAYES ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT V.

In Count V, Rowles alleges violations of substantive due process, brought pursuant to 42 U.S.C. § 1983, against, Eardley, Gallimore, and Scroggs and in their individual capacities and against Hayes in her official capacity. Rowles claims the violation occurred when: "Defendant Scroggs, Eardley, and Gallimore fail[ed] to provide Rowles adequate notice and a meaningful opportunity to be heard. . . ." (Doc. #1-1). Defendants each seek summary judgment based upon immunity.

With respect to Gallimore, just as in Count I, because Gallimore was not involved with the investigation of AB's complaint in her individual capacity, Gallimore is entitled to summary judgment on Count V. Similarly, just as in Count I, Hayes is immune from suit under § 1983, and is also entitled to summary judgment on Count V. The Court considers the merits of Rowles' claim for violation of substantive due process relative to Eardley and Scroggs.

"The Fourteenth Amendment's guarantee of substantive due process prevents the government from engaging in 'conduct that is so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, or is offensive to human dignity' or 'interferes with rights implicit in the concept of ordered liberty.'" Riley v. Hessenflow, No. 11–CV-04253–NKL, 2013 WL 139650, at *3 (W.D. Mo. Jan. 10, 2013) (quoting Moran v. Clarke, 296 F.3d 638, 643 (8th Cir.2002)). "To establish a violation of substantive due process rights by [a state] official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the 'contemporary conscience.'" Flowers v. City of Minneapolis, Minn., 478 F.3d 869, 873 (8th Cir.2007) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8 (1998)). "Substantive due process is generally limited to matters relating to a fundamental right, i.e., marriage, family, procreation, right to bodily integrity." Peterson v. N. Dakota ex rel. N. Dakota Univ. Sys., 240 F.Supp.2d 1055, 1062 (D.N.D. 2003).

To establish a claim based on an inadequate investigation, the plaintiff must show that the flawed investigation was intentional or reckless, and thus shocking to the conscience. Winslow v. Smith, 696 F.3d 716, 739 (8th Cir. 2012). The Eighth Circuit has held that in the realm of discipline at institutions of higher education, a student is only entitled to "adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all necessary protective measures." Woodis v. Westark Cmty. Coll., 160 F.3d 435, 440 (8th Cir. 1998).

Here, the uncontroverted material facts show that Rowles received the due process owed to him. Lammers sent Rowles notice of the investigation, advisement of his rights, and notice of the provisions of the CRR involved in the investigation. Eardley informed Rowles of his charges and Rowles was provided with an election of formal resolution, which he declined. Rowles was

afforded administrative consideration of the complaint based on the totality of the evidence, and appellate review of Eardley's findings which resulted in a reduction of the duration of the sanctions imposed.

Notably, there is an absence in the record that any of the defendants acted with prejudice to Plaintiff during the investigation or disciplinary process.

Further, no reasonable person in defendants' positions would believe that any of the actions complained of with regard to the disciplinary process deprived Plaintiff of a clearly established constitutional or statutory right. As Plaintiff cannot establish that the defendants' conduct violated a clearly established right of which a reasonable person would have known, Scroggs and Eardley are entitled to qualified immunity, and are thus entitled to summary judgment on Count V. Accordingly, it is hereby

ORDERED Defendant Ellen Eardley's Partial Motion for Summary Judgment (Doc. #72) is GRANTED. It is further

ORDERED Defendant Andrea Hayes' Partial Motion for Summary Judgment (Doc. #73) is GRANTED. It is further

ORDERED Defendant Salama Gallimore's Partial Motion for Summary Judgment (Doc. #74) is GRANTED. It is further

ORDERED Defendant Cathy Scroggs' Partial Motion for Summary Judgment (Doc. #76) is GRANTED.

IT IS SO ORDERED.

Dated: <u>April 24, 2019</u>

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT