United States Court of Appeals
For the Eighth Circuit
_____

No. 19-1946
_____

Jeremy A. Rowles

*Plaintiff - Appellant*

v.

Curators of the University of Missouri; Ellen L. Eardley; Andrea Hayes, Interim Assistant Vice Chancellor for Civil Rights & Title IX; Salama Gallimore; Cathy Scroggs

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: September 22, 2020
Filed: December 18, 2020
_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Jeremy A. Rowles, an African-American male, was a Ph.D. candidate at the University of Missouri (University) when a white female undergraduate student filed a Title IX complaint against him. Following an investigation, Rowles was found to have violated the University's policies prohibiting sexual harassment and stalking

on the basis of sex, and he was suspended for two years. Rowles filed this action against the Curators of the University and four individual Title IX investigators (collectively, Appellees), asserting nine claims. The district court[1] dismissed certain claims for failure to state a claim, denied Rowles's motion to compel discovery, and granted summary judgment in favor of Appellees on the remaining claims. Rowles now appeals, and having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Rowles was a Ph.D. candidate in the University's cultural anthropology program. In 2015, while he was working as a teaching assistant, an undergraduate student filed a sexual harassment complaint against him. The University deemed the claim unsubstantiated. However, during the investigation, Appellee Salama Gallimore, one of the University's Title IX investigators, allegedly told Rowles that he "looked like someone who might commit sexual assault." R. Doc. 1-1, at 4.

In September 2016, Rowles met A.B., a white female undergraduate student, at a dance fitness class that she taught at the University "Rec Center." Rowles asked A.B. out on a date, and she declined. Subsequently, Rowles sent A.B. numerous flirtatious Facebook messages, prompting A.B. to ask him to stop because she said he had crossed the line and the messages made her feel uncomfortable. Thereafter, Rowles continued to attend A.B.'s dance classes and attempt to speak with her. He also asked A.B. for private dance lessons and gave her a three-page letter expressing his romantic feelings for her. A.B. filed a Title IX complaint, alleging sexual harassment. The University's Title IX Office informed Rowles that it was investigating A.B.'s allegations as "fall[ing] under the sexual harassment and stalking provisions" of the Standard of Conduct for Students and Student Organizations. R. Doc. 1-1, at 70. After an investigation, Rowles was found to have violated the University's policies prohibiting sexual harassment and stalking on the

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

basis of sex. The University suspended Rowles for four years and permanently banned him from the residence halls and Rec Center. Rowles appealed within the University process, and his suspension was reduced to two years.

The University's sexual harassment policy prohibits:

1) Unwelcome sexual advances or requests for sexual activity by a person or persons in a position of power or authority to another person, or
2) Other unwelcome verbal or physical conduct of a sexual nature by a person to another person, when:
    a) Submission to or rejection of such conduct is used explicitly or implicitly as a condition for academic or employment decisions; or
    b) Such conduct creates a hostile environment by being sufficiently severe or pervasive and objectively offensive that it interferes with, limits or denies the ability of an individual to participate in or benefit from educational programs or activities or employment access, benefits or opportunities.

R. Doc. 1-1, at 70. Additionally, the University's policy prohibiting stalking on the basis of sex provides:

Stalking on the basis of sex is following or engaging in a course of conduct on the basis of sex with no legitimate purpose that puts another person reasonably in fear for his or her safety or would cause a reasonable person under the circumstances to be frightened, intimidated or emotionally distressed.

R. Doc. 1-1, at 70.

Rowles filed this action against the Curators of the University and four individual Title IX investigators: Cathy Scroggs, Ellen Eardley, Gallimore, and Andrea Hayes. He asserted nine claims: three alleging First Amendment violations—substantial overbreadth, void for vagueness, and retaliation—as well as claims for violations of procedural due process, substantive due process, Title IX's

prohibition on sex discrimination in education, Title VI's prohibition on race discrimination in federally funded programs, and the Missouri Human Rights Act's (MHRA) prohibitions on race and sex discrimination in public accommodations. Appellees moved for dismissal of all claims, and the district court dismissed the substantial overbreadth, Title IX, and MHRA claims.

In an effort to obtain evidence in support of his Title VI claim, Rowles sought information in discovery regarding prior Title IX complaints received by the University. Appellees provided summary information for 60 complaints, including the date of the complaint, the race and sex of the accused, the policies which the accused was found to have violated, and the punishment imposed. Rowles moved to compel the production of the Title IX complaints, investigations, and findings pertaining to the 60 complaints. He argued he needed the actual records for two reasons: (1) to show that the University disproportionately sanctions African-American students; and (2) because the records would reveal the factual circumstances underlying each complaint, which were necessary for him to identify similarly situated comparators. The district court denied the motion. It explained that a showing of disproportionate sanctions required statistical analysis and that Rowles had not designated an expert witness for such analysis. It further stated its belief that the existing discovery was sufficient for Rowles to identify similarly situated comparators, which it said were graduate students accused by undergraduate students of sexual harassment and stalking on the basis of sex. Additionally, the district court reasoned that disclosure of the records would unduly burden Appellees.

Rowles moved for summary judgment on his First Amendment claims, which the district court denied. Appellees moved for summary judgment on all remaining claims. In granting Appellees' motions, the district court held that: (1) on the Title VI claim, Rowles failed to demonstrate that similarly situated comparators were disciplined less harshly; (2) the University's sexual harassment and stalking policies were not unconstitutionally vague as applied to Rowles; and (3) the record established that Rowles did not engage in protected speech nor was he punished for his speech, and even assuming he had engaged in protected speech, he failed to

demonstrate that he was deprived of a clearly established First Amendment right.[2] Rowles appeals the district court's dismissal of his substantial overbreadth, Title IX, and MHRA claims; its denial of his motion to compel discovery; and its grants of summary judgment on his vagueness, First Amendment retaliation, and Title VI claims. Due to the nature of the issues, we will begin by addressing the denial of Rowles's motion to compel.

II.

Rowles challenges the district court's denial of his motion to compel, which is most relevant to his Title VI claim. "A district court has very wide discretion in handling pretrial discovery and this Court is most unlikely to fault its judgment unless, in the totality of the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." United States v. One Assortment of 93 NFA Regulated Weapons, 897 F.3d 961, 966 (8th Cir. 2018) (citation omitted). For the reasons discussed below, we conclude that Rowles has failed to meet his burden of showing a gross abuse of discretion.

We begin by observing that Rowles took a "kitchen sink" approach in his complaint. In his 58-page, 282-paragraph amended complaint, he asserted nine different causes of action under both federal and state law. In addition, Rowles alleged few facts in support of his Title VI claim: (1) Gallimore told him in a prior investigation that he looked like someone who might commit sexual assault; (2) a forthcoming law review article posited that the University's enforcement of Title IX "likely" discriminates against African-Americans; (3) "[o]n information and belief, a statistical analysis of Title IX sanctions imposed by the University over the last several years will show a pattern and practice of selective enforcement against male students"; and (4) Rowles would have been treated less harshly if he were a white Ph.D. candidate. R. Doc. 1-1, at 51-52. He did not identify any non-African-

---

[2]The district court also granted summary judgment in favor of Appellees on Rowles's procedural and substantive due process claims, neither of which he challenges on appeal.

American males who were punished less harshly. However, he urged the district court not to dismiss the claim on the grounds that information on such comparators was in the unique possession of the University and that discovery would "bear out" his assertions. We agree with the district court's observation that his request "stretche[d] the confines of Fed. R. Civ. P. 12(b)(6)." R. Doc. 28, at 22. It appears that Rowles was attempting to "skip" to the discovery process to learn facts that likely should have been uncovered in a pre-suit investigation and pleaded in his complaint.

Unfortunately, Rowles's "kitchen sink" approach carried over to the discovery process. He sought from Appellees information pertaining to all Title IX complaints received by the University for the previous five years. In response, Appellees provided much of the requested information for complaints going back three years, a time frame the district court ultimately found sufficient. Appellees provided summary information for a total of 60 complaints. Their responses revealed that, approximately one year prior to Rowles's discipline, two white students were disciplined less harshly for violating the policies prohibiting sexual harassment and stalking on the basis of sex. To gain more information on potential similarly situated comparators, Rowles then moved to compel production of the actual Title IX complaints, investigations, and findings pertaining to all 60 Title IX complaints, even though he had not expressly requested such records in discovery. See R. Doc. 57, at 3. During a telephone conference on the motion to compel, Appellees stated that they would be willing to provide more information regarding the two white students mentioned above. However, Rowles did not take Appellees up on their offer: in supplemental briefing following the telephone conference, Rowles continued to insist upon obtaining records for all 60 complaints.

The district court denied Rowles's motion, based on its understanding that Appellees' existing discovery responses were sufficient for Rowles to identify similarly situated comparators. Additionally, regarding Rowles's attempt to show disparate treatment of African-Americans, the district court observed that such showing requires a "statistical analysis" and that Rowles had not designated an

expert witness for such analysis. R. Doc. 57, at 4. On appeal, Rowles argues that the district court's denial of the motion prevented him from obtaining evidence necessary to prove that similarly situated comparators were treated differently. Further, Rowles points out that the district court ultimately granted summary judgment to Appellees on the basis that he failed to produce evidence that his proffered comparators engaged in sufficiently similar conduct, which the discovery he sought would have revealed.

While we find such a catch-22 concerning, in light of Rowles's approach to pleading and discovery, as well as Appellees' offer to provide more information on the two white students who committed the same violations, we cannot say that the district court abused its discretion in denying Rowles's motion to compel. Cf. Stuart v. Gen. Motors Corp., 217 F.3d 621, 637 (8th Cir. 2000) (district court did not abuse its discretion in refusing to compel the discovery of documents in Title VII case showing that female plaintiff was treated differently than similarly situated male co-workers); United States v. Hirsch, 360 F.3d 860, 864 (8th Cir. 2004) (district court did not abuse its discretion in refusing to compel discovery in selective prosecution case because defendant failed to produce "at least some credible showing of differential treatment of similarly situated members of other races or a protected class"). Moreover, as explained in further detail below, see infra Section III.A, we do not think the district court's discovery ruling prevented Rowles from adequately opposing Appellees' motion for summary judgment.

### III.

Rowles next contends that the district court erred in granting summary judgment in favor of Appellees on his Title VI, vagueness, and First Amendment retaliation claims. We review de novo a grant of summary judgment. Jenkins v. Winter, 540 F.3d 742, 748 (8th Cir. 2008). "Viewing the evidence and drawing all inferences most favorably to the non-moving party," we affirm "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.

A.

Rowles argues that there are genuine issues of material fact as to whether similarly situated white students were disciplined less harshly, making summary judgment on his Title VI claim improper. Title VI prohibits discrimination on the basis of race in federally funded programs. See 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). It is undisputed that the University receives federal funding. To prevail on his Title VI claim, Rowles must show that his race, color, or national origin motivated the defendant's discriminatory conduct. See Thompson v. Bd. of Spec. Sch. Dist. No. 1, 144 F.3d 574, 581 (8th Cir. 1998). When there is no direct evidence of discrimination, the plaintiff may rely upon the three-step burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for Title VII claims. See Fuller v. Rayburn, 161 F.3d 516, 518 (8th Cir. 1998). On appeal, Rowles does not argue that there is direct evidence of discrimination, so we will apply the McDonnell Douglas framework to determine whether the district court properly granted summary judgment on this claim.

Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of racial discrimination. See 411 U.S. at 802. To establish a prima facie case, the plaintiff must show: (1) "he is a member of a protected class"; (2) "he suffered an adverse action at the hands of defendants in pursuit of his education"; (3) "he was qualified to continue in pursuit of his education"; and (4) he was treated differently from similarly situated students outside his protected class. Ajiwoju v. Curators of Univ. of Mo., No. 06-1005-CV-W-FJG, 2009 WL 10705058, at *2 (W.D. Mo. Feb. 11, 2009) (citation omitted), aff'd sub nom. Ajiwoju v. Univ. of Mo.-Kansas City, 363 F. App'x 420 (8th Cir. 2010) (per curiam). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision. McDonnell Douglas Corp., 411 U.S. at 802. If the defendant proffers such a reason, the burden shifts back to

the plaintiff to show that the proffered reason was mere pretext for discrimination. Id. at 804.

The district court concluded that Rowles failed to make a prima facie case because he failed to demonstrate that his proffered comparators—particularly the two white students also accused of sexual harassment and stalking on the basis of sex—had engaged in sufficiently similar conduct. However, the district court also acknowledged that it denied Rowles access to further discovery which could have revealed such information. We agree with the district court that Rowles failed to meet his burden regarding similarly situated comparators, albeit for a different reason.

Summary judgment was appropriate because Rowles failed to present evidence that his proffered comparators, including the two white students mentioned above, were *graduate* students and thus similarly situated to him in all relevant respects. In his amended complaint, Rowles alleged that Appellees would have treated him differently if he were a white Ph.D. student. Nonetheless, there is no indication from the record that Rowles sought to discover from Appellees whether the students who were the subject of Title IX complaints were graduate students. Moreover, the district court made clear in its ruling on Rowles's motion to compel that the proper comparators were graduate students accused by undergraduate students of sexual harassment and stalking on the basis of sex. Because it appears that Rowles never challenged this finding, we will assume without deciding that such graduate students are similarly situated in all relevant respects, as opposed to a broader universe of students as urged by Rowles. While the district court was mistaken in stating that Rowles already had information on the accused students' status when it ruled on the motion to compel, nothing in the record suggests that Rowles brought this deficiency to the district court's attention, even after Appellees moved for summary judgment. Nor is there any indication that Rowles subsequently sought such information from Appellees. In sum, Rowles failed to show that similarly situated comparators were treated differently because he failed to demonstrate that his proffered comparators were graduate students. Accordingly,

we affirm the district court's grant of summary judgment on the Title VI claim. See Loftness Specialized Farm Equip., Inc. v. Twiestmeyer, 742 F.3d 845, 851 (8th Cir. 2014) (appellate court may "affirm the district court's judgment on any basis supported by the record").

B.

Next, Rowles argues that genuine issues of material fact exist as to whether the University's policies are unconstitutionally vague as applied to him. To survive a vagueness challenge, a governmental policy must satisfy a two-prong test. "The [policy] must first provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement." United States v. Barraza, 576 F.3d 798, 806 (8th Cir. 2009) (discussing vagueness in the context of a criminal statute). "[F]lexibility and reasonable breadth" are acceptable as long as it is "clear what the [rule] as a whole prohibits." Grayned v. City of Rockford, 408 U.S. 104, 110 (1972) (citation omitted). Moreover, "[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982). When, as here, an enactment does not impose criminal penalties, due process tolerates a lesser degree of specificity than it would from a criminal statute. Id. at 498-99. Still less specificity may be allowed for public school disciplinary rules. See Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 686 (1986).

We agree with the district court that the policies provide adequate notice of what conduct is prohibited. To constitute sexual harassment under the University's policy, the verbal conduct must be "sufficiently severe or pervasive and objectively offensive." Similarly, to constitute stalking, a person must engage in conduct "with no legitimate purpose that puts another person reasonably in fear for his or her safety or would cause a reasonable person under the circumstances to be frightened, intimidated, or emotionally distressed." These qualifiers, particularly the

-10-
Case 2:17-cv-04250-BCW   Document 125-1   Filed 12/18/20   Page 10 of 17
Appellate Case: 19-1946   Page: 10   Date Filed: 12/18/2020 Entry ID: 4986304

"objective" and "reasonable person" components, provide adequate notice in this context.

Additionally, we agree that the individual Appellees' inability to agree on the exact scope of prohibited conduct or the definition of words in the policies does not mean the policies are subject to arbitrary enforcement. Enforcement of student conduct policies requires some degree of judgment. See Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 507 (1969) (noting the "comprehensive authority" of school officials to proscribe and control conduct); Grayned, 408 U.S. at 110-11. We also agree with Appellees that although "borderline conduct may prompt disagreement about whether the policy applies in a given case, the mere fact that enforcement requires the exercise of a reasonable degree of judgment does not make the policy impermissibly vague." Appellees' Br. 50 (citing Grayned, 408 U.S. at 114); see also State v. Vaughn, 366 S.W.3d 513, 521-22 (Mo. 2012) (en banc) (opining that "emotional distress" are words with common understanding). Accordingly, we affirm the district court's grant of summary judgment on Rowles's void for vagueness claim.

C.

Rowles next challenges the district court's grant of summary judgment on his First Amendment retaliation claim. He argues that his "amorous speech" is protected under the First Amendment and that genuine issues of fact exist as to whether he was punished for engaging in protected speech. A plaintiff alleging First Amendment retaliation must show that (1) he engaged in a protected activity; (2) defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated in part by plaintiff's exercise of his constitutional rights. Scheffler v. Molin, 743 F.3d 619, 621 (8th Cir. 2014). Appellees additionally asserted that they are protected by qualified immunity. To survive Appellees' qualified immunity defense, Rowles must show that Appellees deprived him of a constitutional right and that his

-11-
Case 2:17-cv-04250-BCW   Document 125-1   Filed 12/18/20   Page 11 of 17
Appellate Case: 19-1946   Page: 11   Date Filed: 12/18/2020 Entry ID: 4986304

constitutional right was clearly established at the time of Appellees' alleged misconduct. See Nord v. Walsh Cnty., 757 F.3d 734, 738 (8th Cir. 2014).

Rowles concedes that summary judgment was properly granted as to Gallimore. As to Eardley and Scroggs, Rowles argues that there are genuine issues of material fact concerning whether they took adverse action against him for engaging in protected "amorous speech." We agree with the district court that even if Rowles had shown that he engaged in protected speech and that a causal connection exists between such speech and his discipline, Eardley and Scroggs are nonetheless entitled to qualified immunity because Rowles cannot show that he was deprived of a clearly established constitutional right. See id. Rowles does not point to any clearly established law showing that a suspension from a University for a course of conduct found to constitute sexual harassment and stalking on the basis of sex could give rise to a First Amendment violation. It was reasonable for Eardley and Scroggs to conclude that it was permissible under the First Amendment to punish Rowles for violating the University's policies against harassment and stalking. See Hope v. Pelzer, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987))).

Next, we address Rowles's argument that the district court erroneously held that the Eleventh Amendment barred the claim against Hayes in her official capacity. Notwithstanding Eleventh Amendment immunity, Ex parte Young allows suits for injunctive relief to proceed against a state official sued in her official capacity. See 209 U.S. 123 (1908). Rowles sued Hayes in her official capacity as the current Vice Chancellor for Civil Rights and Title IX, seeking only an injunction ordering his reinstatement as a doctoral candidate and prohibiting enforcement of the sexual harassment and stalking policies to the extent they are void for vagueness or overbroad. We agree with Appellees that Rowles's request for reinstatement is moot because his suspension ended in July 2019. In addition, we agree that Rowles is not entitled to the requested injunctive relief because he did not suffer a First

Amendment violation.[3]   Accordingly, we affirm the district court's grant of summary judgment on the First Amendment retaliation claim in its entirety.  See Loftness, 742 F.3d at 851 (appellate court may "affirm the district court's judgment on any basis supported by the record").

IV.

Rowles further asserts that the district court erred in dismissing his substantial overbreadth, Title IX, and MHRA claims.  "This court reviews de novo the grant of a motion to dismiss, accepting 'the allegations contained in the complaint as true and mak[ing] all reasonable inferences in favor of the nonmoving party.'"  Jones v. Douglas Co. Sheriff's Dep't, 915 F.3d 498, 499 (8th Cir. 2019) (alteration in original) (quoting Martin v. Iowa, 752 F.3d 725, 727 (8th Cir. 2014)).

A.

Rowles argues that the University's policies against sexual harassment and stalking on the basis of sex are facially overbroad in their prohibitions against non-threatening speech.  To succeed on his claim that the policies are unconstitutionally overbroad, Rowles must plead sufficient facts to show that "a substantial number of [the policies'] applications are unconstitutional[] [when] judged in relation to [their] plainly legitimate sweep."  United States v. Stevens, 559 U.S. 460, 473 (2010) (citation omitted) (discussing overbreadth in the context of a criminal statute).  He states a claim only if either of the policies is "not readily subject to a narrowing construction by the state courts, and its deterrent effect on legitimate expression is both real and substantial."  Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975) (citation omitted).

---

[3]Rowles did not respond to either of these arguments in his reply brief.

We agree with the district court that Rowles failed to plausibly allege that the University's policies have a real and substantial effect on protected speech. See id. The policies do not target speech but instead prohibit conduct that is defined and narrowed using language with common usage and understanding. Cf. Vaughn, 366 S.W.3d at 521-22 ("emotional distress" are words with common understanding). Moreover, Rowles failed to allege that the University's policies have *ever* been impermissibly applied to protected speech (such as a student protest, a hypothetical he posed in his opening brief on appeal), let alone that such an application constitutes a "substantial number" of enforcement actions. See Stevens, 559 U.S. at 473. Finally, we note that the language of the University's sexual harassment policy tracks nearly verbatim with the United States Supreme Court's definition of "student-on-student" sexual harassment that may subject an educational institution to Title IX liability. See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Ed., 526 U.S. 629, 649-52 (1999) (holding that, if a school is faced with allegations of sexual harassment that is "so severe, pervasive, and objectively offensive that it denies its victims equal access to education that Title IX is designed to protect," the school may be liable under Title IX if it remains deliberately indifferent to such allegations). Accordingly, we affirm the district court's dismissal of Rowles's substantial overbreadth claim.

B.

Rowles next contends that he stated a plausible claim of sex discrimination under Title IX. As relevant here, Title IX provides, "No person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, *or be subjected to discrimination* under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphases added). Title IX is "understood to 'bar[] the imposition of university discipline where [sex] is a motivating factor in the decision to discipline.'" Doe v. Columbia Univ., 831 F.3d 46, 53 (2d Cir. 2016) (first alteration in original) (quoting Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994)). To state a claim, Rowles must "allege adequately

that the University disciplined him on the basis of sex—that is, because he is a male." Doe v. Univ. of Ark. - Fayetteville, 974 F.3d 858, 864 (8th Cir. 2020).

We recently held in Doe v. University of Arkansas - Fayetteville that a male plaintiff stated a plausible Title IX claim arising out of a university's investigation of a reported sexual assault because he pleaded, among other things, facts demonstrating that the investigation "reached an outcome that was against the substantial weight of the evidence." See id. Considered together with allegations that the university's decision was inconsistent with ordinary practice and that it faced external pressure to show it "acted vigorously in response to complaints by female students," we concluded that the complaint supported an inference that the university was biased based on sex. Id. at 865-66.

We conclude that Rowles's complaint fails to plausibly allege that the investigation reached an outcome against the weight of the evidence or allege any additional facts suggesting bias based on his sex. For example, Rowles argues that the University reached an erroneous outcome because A.B. did not claim that he intimidated, threatened, or touched her inappropriately, only that his "bizarre" behavior made her feel "uncomfortable." But his characterization omits material and undisputed facts about his conduct that led the University to conclude that he had violated the sexual harassment and stalking policies. For example, after she declined his invitation for a date and asked him to stop messaging her, he continued to attempt to speak with her, requested private lessons from her, and gave her a love letter.[4] Additionally, Rowles argues that Gallimore's alleged comment during the prior Title IX investigation that he "looked like someone who might commit sexual assault" suggests bias towards large men. We do not believe that an investigator's stray comment during a prior investigation, when such investigator is not alleged to have participated in the present investigation, plausibly demonstrates that the University disciplined Rowles based on his sex. See Doe v. Wash. Univ., 434 F.

---

[4] The entirety of A.B.'s complaint, the investigative report, and disciplinary findings were attached as exhibits to Rowles's amended complaint.

Supp. 3d 735, 760 (E.D. Mo. 2020) (finding that Title IX investigator's op-ed in which she expressed support for students who are sexually assaulted did not reveal bias against men, and also noting that investigator did not participate in the findings leading to plaintiff's discipline).

Rowles also advances a "selective enforcement" theory. This theory requires a male plaintiff to allege that "he received disparate punishment as compared to a similarly-situated comparator" and that such punishment "was motivated by his [sex]." Gentry v. Mountain Home Sch. Dist., No. 3:17-CV-3008, 2018 WL 2145011, at *6 (W.D. Ark. May 9, 2018). In support, Rowles alleges that the Title IX investigators treated A.B. more favorably during the investigation by giving her more time to decide between informal and formal resolution and also telling her that she could have an advisor. But allegations regarding the University's treatment of Rowles's *accuser* do not support his claim that a female in similar circumstances— i.e., a female accused of sexual harassment or stalking—was treated more favorably. Therefore, Rowles has failed to plausibly allege that the University disciplined him because he is a male. See Univ. of Ark. - Fayetteville, 974 F.3d at 864. Accordingly, we affirm the district court's dismissal of Rowles's Title IX claim.

C.

Finally, Rowles challenges the dismissal of his discrimination claims under the MHRA. To state a claim for discrimination in public accommodations under the MHRA, a plaintiff must allege that "(1) [he] is a member of a class protected by section 213.065; (2) [he] was discriminated against in the use of a public accommodation (as defined by section 213.010); and (3) [his] status as a member of a protected class was a contributing factor in that discrimination." R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist., 568 S.W.3d 420, 424-25 (Mo. 2019) (en banc) (footnote omitted).

We conclude that Rowles failed to state a plausible claim for sex discrimination under the MHRA for reasons similar to those that support our

conclusion that he failed to state a Title IX claim. Although we recognize that the MHRA's "contributing factor" standard is less rigorous than Title IX's "motivating factor" standard, see Button v. Dakota, Minn. & E. R.R. Corp., 963 F.3d 824, 831 (8th Cir. 2020), we conclude that Rowles's allegations fail to meet either.

Ultimately, we reach the same conclusion regarding Rowles's race discrimination claim, but we are compelled to provide additional explanation. Because the district court allowed Rowles's Title VI race discrimination claim to survive Appellees' motion to dismiss, we believe it was error for the court to have dismissed the state law race discrimination claim. If Rowles's complaint plausibly alleged that his race was a motivating factor, it necessarily follows that he plausibly alleged race was a *contributing* factor. See id. Nonetheless, we find the error harmless in light of our conclusion that Appellees were properly granted summary judgment on Rowles's Title VI claim. We conclude that the evidence proffered by Rowles in opposition to summary judgment fails to meet either the "contributing factor" or "motivating factor" standard.

V.

For the foregoing reasons, we affirm the judgment of the district court.

_____